**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A** | § | |
| **BRAZOS LICENSING AND** | § | **C.A. NO. 6:20-cv-00487-ADA** |
| **DEVELOPMENT,** | § | **C.A. NO. 6:20-cv-00488-ADA** |
| | § | **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff,* | § | **C.A. NO. 6:20-cv-00490-ADA** |
| | § | **C.A. NO. 6:20-cv-00491-ADA** |
| **v.** | § | **C.A. NO. 6:20-cv-00492-ADA** |
| | § | **C.A. NO. 6:20-cv-00493-ADA** |
| **ZTE CORPORATION, ZTE (USA) INC.** | § | **C.A. NO. 6:20-cv-00494-ADA** |
| **AND ZTE (TX), INC.,** | § | **C.A. NO. 6:20-cv-00495-ADA** |
| | § | **C.A. NO. 6:20-cv-00496-ADA** |
| *Defendants.* | § | **C.A. NO. 6:20-cv-00497-ADA** |
| | § | |

## DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER VENUE

## TABLE OF CONTENTS

I.      Introduction: Again and Again, Plaintiff Has Filed Suit in an Improper Venue ................ 1

II.     Procedural History: WSOU Cannot Establish Venue for All Defendants ......................... 2

III.    Factual Background: WSOU Filed This Second Suit in An Improper Venue .................. 3

        A.      Plaintiff WSOU ................................................................................................ 3

        B.      Defendant ZTE (USA) Inc. ("ZTA") ............................................................... 3

        C.      Defendant ZTE (TX), Inc. ("ZTX") ................................................................ 5

        D.      Defendant ZTE Corp. ("ZTC") ....................................................................... 6

IV.     Statement of Venue Law ............................................................................................. 7

        A.      Venue in Patent Cases Can Only Exist, if Each of the Defendants Either
                Resides or Has a Regular and Established Place of Business in the Forum .......... 7

                1.      Residency of Defendants (Where a Defendant Resides) in Patent
                        Cases is Determined on a District-by-District Basis, Not a State-
                        by-State Basis .................................................................................... 8

                2.      Venue Over Non-Resident Defendants Requires a Regular and
                        Established Place of Business in the Forum ......................................... 10

        B.      Venue Over a Defendant Cannot Be Established by Imputing the Location
                of Third Parties Without Collapsing the Corporate Form ................................... 12

V.      Argument I: The Amended Complaint Should Be Dismissed ......................................... 13

        A.      28 U.S.C. §1391 Does Not Apply for ZTA And ZTX ....................................... 14

        B.      Venue is Improper for ZTA & ZTX Under the Prong 1 of 28 U.S.C.
                §1400(b) ......................................................................................................... 14

                1.      ZTA Does Not Reside in This District .................................................. 15

                2.      ZTX Does Not Reside in This District .................................................. 15

        C.      Venue is Improper Under Prong 2 of 28 U.S.C. §1400(b) ................................. 16

                1.      ZTA Has Not Committed Acts of Infringement and Does Not
                        Maintain a Regular and Established Place of Business in this
                        District............................................................................................... 17

|  | 2. | ZTX Has Not Committed Acts of Infringement and Does Not Maintain a Regular and Established Place of Business in this District | 19 |

| | D. | 28 U.S.C. §1400(b) is Inapplicable to ZTE Corp. | 21 |

| VI. | | Argument II: Should the Court Not Dismiss These Cases For The Lack of Venue, Then The Cases Should Be Transferred to the Northern District of Texas | 22 |

| | A. | WSOU's Amended Complaint Moots Transfer Briefings for All Defendants | 23 |

| | B. | Transfer of these Cases to the Northern District of Texas Is Appropriate Here | 25 |

| | 1. | The Private Interest Factors Weigh in Favor of Transfer to the NDTX | 25 |

| | 2. | The Public Factors Weight in Favor of Transfer to the NDTX | 28 |

| VII. | | Conclusion: This Case Should Be Dismissed or Transferred | 30 |

## I.      Introduction: Again and Again, Plaintiff Has Filed Suit in an Improper Venue

Pursuant to Rule 12 of the Federal Rules of Civil Procedure (F.R.C.P.), Defendants ZTE (USA) Inc., ZTE (TX), Inc., and ZTE Corp (collectively "ZTE," and "ZTA," "ZTX," and "ZTC," respectively) move to dismiss the Complaint of WSOU Investments LLC d/b/a Brazos Licensing and Development ("WSOU") for improper venue.  Two ZTE entities are absent from the forum.

WSOU now brings a second lawsuit in the wrong venue. WSOU exhausted its "do-overs." WSOU now seeks, not only another bite at the apple, but it seeks a third bite; and, unfortunately for WSOU, the apple is completely consumed. As such, this Court should dismiss these actions, or alternatively, transfer these cases to the proper forum in the Northern District of Texas ("NDTX").

As bite one, WSOU's first case started in the Western District of Texas ("WDTX") on March 26, 2020, when it filed *eleven* separate actions for eleven patents against each Defendant (the "WSOU I" matters).[1] After months delay, WSOU voluntarily dismissed the cases on June 3, 2020. On the same day, WSOU filed the matters against the same ZTE Defendants, in the same court, for the same eleven patents (the "WSOU II" matters).[2] This was WSOU's first "do-over."

For bite two, in response to ZTE's October 9, 2020 Motions to Dismiss and/or Transfer to the NDTX, Dkt. Nos. 23-27, WSOU then filed an improper and untimely Amended Complaint, on November 6, 2020—more than 21 days later and without leave from the Court. *See* Dkt. 38, supplemented by Dkt. 39; *see also* F.R.C.P. 15(a)(1)(B). This was WSOU's second "do-over."

For bite three, the new Amended Complaint adds new allegations pertaining to all three ZTE Defendants. *See* Dkt. 38, supplemented by Dkt. 39. There is no dispute that the Amended

---

[1] *See* WDTX Case Nos. 6:20-cv-00211, -00216, -00224, -00228, -00229, -00231, -00238, -00240, -00242, -00254, and -00255 (collectively "WSOU I").
[2] Citations throughout here refer to new WDTX Case Nos. -00487 through -00497 (collectively "WSOU II"), and specific citations reference to the docket for WDTX Case No. -00487.

Complaint moots all Motion to Dismiss briefings for all three Defendants. *See* Dkt. 41.  WSOU, however, maintains—against all caselaw—that ZTE's Motion to Transfer, as to ZTA and ZTX only, somehow remain ripe. This is nonsensical.  ZTE again moves herein to dismiss all amended lawsuits for all the Defendants, or alternatively, transfer them for all Defendants to the NDTX.

As to the merits on venue, this Court should not grant WSOU a third "do-over" and should dismiss WSOU's faulty Amended Complaint. WSOU's Amended Complaint alleges patent infringement against three separate entities: (1) ZTA, (2) ZTX, and (3) ZTC. For venue to be proper in a District, WSOU must establish that venue is proper for each Defendant separately. WSOU cannot here, so it lumps all three Defendants together for venue purposes.  But no Defendant resides, has committed alleged acts of infringement, or has a regular and established place of business in the WDTX. As such, under the test for venue in patent cases, as affirmed by the Supreme Court and clarified by the Federal Circuit, this District is not a proper forum for this case. The Amended Complaint should be dismissed or, alternatively, transferred to the NDTX.

## II.    Procedural History: WSOU Cannot Establish Venue for All Defendants

On March 23, 2020, in the WDTX, WSOU filed an initial complaint for patent infringement against ZTA, ZTX, and ZTC. WSOU I, Case No. 6:20-cv-00211, Dkt. 1. Before Defendants answered, Plaintiffs voluntarily dismissed the action on June 3, 2020 and then re-filed an identical complaint on the same day, in what is now "the WSOU II cases." *Id.* at Dkt. 16.

On October 9, 2020, Defendants filed individual Motions to Dismiss, or in the alternative to Transfer (the "Original Motions") at Dkt. Nos. 23, 24, 25 (Dkt. Nos. 26 and 27 correcting Dkt. 25). On November 6, 2020, WSOU filed both responses to Defendants' Original Motions[3] *and* the Amended Complaint at Dkt. Nos. 36, 37, and 38, respectively. WSOU's Amended Complaint

---

[3] In response to the three individual ZTE respective motions, WSOU filed one response with respect to ZTA, and another response with respect to ZTX and ZTC. *See* Dkt. Nos. 36 and 37.

included new factual allegations related to jurisdiction and venue. Dkt. Nos 38, ¶¶ 7-22.  WSOU collectively alleges infringement of *eleven* patents across multiple technological categories.

In the Amended Complaint, WSOU alleges venue is proper pursuant to 28 U.S.C. §§ 1391 and/or 1400(b). WSOU alleges that Defendants "committed acts of infringement and have places of business in this District and/or are foreign entities for purpose of § 1391." *Id*. ¶ 22. WSOU also alleges that ZTX "has maintained a business at 7000 N MO-PAC EXPRESSWAY 200 Austin, TX [78730];" that ZTA "has maintained a place of business at 6500 River Place Blvd., Austin, TX 78730;" and that ZTC "describes a 'research-and-development center in Austin, Texas.'" *Id*.  As outlined below, WSOU's allegations as to the presence of ZTX and ZTA in the WDTX are wrong.

## III.    Factual Background: WSOU Filed This Second Suit in An Improper Venue

### A.    Plaintiff WSOU

WSOU is a limited liability corporation organized in Delaware, allegedly with a place of business at 605 Austin Ave, Ste 6, Waco, TX 76701—an address not associated with WSOU but rather a titling company.  Dkt. 38, ¶ 2; *see also* Lavenue Decl. Ex. A, Bloomberg Company Profile for the "First Title Co of Waco LLC.  WSOU was formed two months before filing the original suit in WSOU I, and WSOU lacks any real connections to WDTX. WSOU alleges it is the owner of all rights, title, and interest of the eleven patents.  *Id.*, ¶¶ 24–25.

### B.    Defendant ZTE (USA) Inc. ("ZTA")

ZTA is a New Jersey Corporation with its principal place of business located in the NDTX, at 2425 North Central Expressway, Suite 800, Richardson, Texas. Wood Decl. ¶¶ 2 and 3. (ZTA's location in Richardson is in the NDTX.)  ZTA is a wholly-owned subsidiary of ZTC. *Id.* ¶ 12.

At the time of filing of the various lawsuits and multiple complaints—whether (1) the original complaint in WSOU I, (2) the original complaint in WSOU II, or (3) the Amended Complaint—ZTA only maintained a single place of business, its principal place of business in

Richardson (in the NDTX). Wood Decl. ¶¶ 3 and 4. ZTA has no regular and established place of business in the WDTX. *Id.* ¶ 8. ZTA has no physical presence, such as a storefront, physical facility, or owned, leased, or rented office space, in the WDTX. *Id.* ¶ 9. ZTA has no bank accounts in the WDTX. *Id.* ¶ 15. ZTA does not have a registered agent within the WDTX. *Id.* ¶ 10.

ZTA has no employees, directors, or other personnel in the WDTX conducting its business. *Id.* at ¶ 10. ZTA has no agents assisting in production, storage, transport, and exchange of goods or services or otherwise carrying out the business of ZTA in the WDTX. *Id.* at ¶ 13. ZTA is not recruiting employees from the WDTX. *Id.* With no offices in the WDTX, ZTA does not advertise or represent, internally or externally, that it has a place of business in the WDTX. *Id.* ¶¶ 7.

Before *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1516, 197 L. Ed. 2d 816 (2017) was decided, ZTA maintained a physical location at River Place Corporate Park, Building I, 6500 River Place Boulevard, Austin, Texas 78730. Wood Decl. ¶ 4. ZTA, however, stopped maintaining this Austin location since at least as early as July 31, 2015. *Id*. The building no longer identifies ZTA as an occupant either. *See* Lavenue Decl. Ex. B, Google Street View for 6500 River Place Boulevard. Additionally, ZTA has not paid property taxes, of any kind, in the WDTX since at least July 31, 2015 when it ceased maintaining a physical location in the WDTX. Wood Decl. ¶ 5. Nonetheless, since *TC Heartland* was decided, it is notable that a series of subsequent cases have established that venue in Texas against ZTA lies in the NDTX, not WDTX.[4]

---

[4] *See, e.g.*, *Am. GNC Corp. v. ZTE Corp*., No. 4:17CV620, 2017 WL 5157700, at *1 (E.D. Tex. Nov. 7, 2017), *mandamus granted, order vacated sub nom. In re ZTE (USA) Inc.,* 890 F.3d 1008 (Fed. Cir. 2018); *Fractus, S.A. v. ZTE Corporation et al.,* Order Granting Motion to Transfer to the N.D.Tex., No. 2:17-cv-00561-JRG, Dkt. No 104, E.D. Tex.; *EVS Codec Technologies, LLC v. ZTE Corp. et al.*, No. 2:18-cv-00344-JRG, Dkt. No. 38, E.D. Tex.

C.     **Defendant ZTE (TX), Inc. ("ZTX")**

ZTX is a wholly owned subsidiary of ZTE Hong Kong Ltd., which is in turn a wholly owned subsidiary of ZTC, an entity incorporated under the laws of the People's Republic of China. Shan Decl. ¶ 4. ZTX conducts research and development activities and provides technical marketing support for ZTC. *Id.* ¶ 6. ZTX's research and development activities are focused upstream on technologies potentially relevant to the development of products in the future and is therefore not directed towards, nor performed in contemplation of, any specific handsets or network devices. *Id.* ¶ 7. ZTX operates in the areas of wireline technology, wireless technology, microwave technology, and handset technology. *Id.* ZTC is the only customer of ZTX. *Id.* ¶ 6. Rather, ZTX offers technical marketing support in connection with ZTC devices. *Id.* ZTX does not provide any services to third parties other than ZTC. *Id.*

ZTX does not make, sell or offer for sale any handsets or network devices (for end use, distribution, third-party demonstrations, qualification testing, or other commercial purpose). *Id.* ¶ 8. ZTX does not import or use any handsets or network devices within the WDTX either. *Id.* ¶ 10.

Though ZTX is a Texas company, *Id.* ¶¶ 3, 14, it has only two places of business, one in San Diego, CA and one in Morristown, NJ.  *Id.* ¶ 2.  ZTX's registered agent and registered office in Texas are, and at all times, since before these cases were filed on June 3, 2020, CT Corporation System, which is located at 1999 Bryan St, Suite 900, Dallas, TX 75201 (in the NDTX). *Id.* ¶ 21.

As such, with offices in California and New Jersey, no employees of ZTX live or work within WDTX. Shan Decl. ¶ 19. So, none of ZTX's employees are expected to have particularized knowledge relevant to any of these cases. *Id.* ¶ 20. ZTX does not have, and does not advertise or represent that it has, a physical place of business in the WDTX. *Id.* ¶ 13 and 14. Indeed, ZTX does not have any offices, warehouses, stores, facilities, and bank accounts in the WDTX. *Id.* ¶ 12, 18.

Until August 31, 2018—well before the filing of any of these suits—ZTX maintained a

5

physical location at Plaza 7000, 7000 Mopac Expressway, 2nd Floor, Austin, Texas. *Id.* ¶ 14.
Subsequently, however, ZTX Inc. has not maintained any physical location in the State of Texas
and has not advertised or made representations that it has a place of business in Western District
of Texas, including without limitation telephone directories, websites, or signs on buildings. *Id.*

As part of its prior presence in the WDTX, ZTX did pay, in error, $1128 USD ($1 USD
service fee) on November 26, 2019, in 2019 taxes in Travis County. *Id.* ¶ 15. And, a similar bill
for 2020 was issued to ZTX. *Id.* ZTX recently became aware of these mistaken taxes and payments
and filed a Form for Rendition of Taxable Property in Travis County, indicating that ZTX moved
on August 31, 2018, and no ZTX assets remained in the county in 2019 and 2020. *Id.* ¶¶ 15-17.

Additionally, as with ZTA as being in the NDTX, since *TC Heartland* was decided, a series
of subsequent cases have established venue in Texas against ZTX lies in the NTDX, not WDTX.[5]

### D.   Defendant ZTE Corp. ("ZTC")

ZTC is a Chinese company with its principle place of business in Shenzhen, China, that
does not do business in the United States. Dkt. 27, Kuang Decl. at ¶¶ 4, 5. Instead, ZTC established
ZTA as its subsidiary in 1998 for the express purpose of marketing, distributing, selling, installing,
servicing and supporting telecommunications equipment in the United States. Dkt. 27, Kuang
Decl. at ¶¶ 12. WSOU erroneously claims ZTC regularly ships goods to ZTA's headquarters in
Richardson, and to other addresses in Texas. *See* Dkt. 38 at ¶ 20 and 21. But ZTC does not make,
use, sell, offer for sale, or import into the United States, any products or services (whether for end
use, distribution, third-party demonstrations, qualification testing, or any other commercial
purpose). Dkt. 27, Kuang Decl. at ¶ 6. WSOU's other erroneous claim as to ZTC is an assertion

---

[5] *See, e.g.*, Am. *GNC Corp. v. ZTE Corp.*, No. 4:17CV620, 2017 WL 5157700, at *1 (E.D. Tex.
Nov. 7, 2017), *mandamus granted, order vacated sub nom. In re ZTE (USA) Inc.,* 890 F.3d 1008
(Fed. Cir. 2018);*Fractus, S.A. v. ZTE Corporation et al.,* Order Granting Motion to Transfer to the
N.D.Tex., No. 2:17-cv-00561-JRG, Dkt. No 104, E.D. Tex.

that "ZTE Corporation also [sic] describes a "research-and-development center in Austin, Texas."

Dkt. 38 at ¶ 22. But ZTC has never had such a place of business at that location, or indeed within

the WDTX. Dkt. 27, Kuang Decl. at ¶ 9.

## IV.   Statement of Venue Law

These cases should be dismissed for improper venue under F.R.C.P. 12(b)(3). Federal

Circuit law determines where patent venue lies. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed.

Cir. 2018). Importantly, "the Plaintiff bears the burden of establishing proper venue," *Id.* at 1013.

Venue must be determined as to each defendant separately. *Magnacoustics, Inc. v.

Resonance Tech. Co.*, No. 97–1247, 1997 WL 592863, at *1 (Fed. Cir. Sept. 25, 1997) ("[A]s

firmly established by judicial decisions, in an action involving multiple defendants venue and

jurisdiction requirements must be met as to ***each defendant***.") (citing 17 Moore's Fed. Practice 3d

§ 111.12[4][b]) (emphasis added). Venue must be proper ***for all defendants*** for an action to be

brought. *See AGIS Software Development, LLC v. ZTE Corp. et al.*, 2018 WL 4854023, at *4 (E.D.

Tex. Sept. 28, 2018) ("Having found venue improper as to ZTA, the Court need not consider the

propriety of venue as to ZTX as, in order for a district to be 'one in which [an] action [may be]

brought, . . . both venue and jurisdiction must be proper there,' as to all defendants."); *see also

Magnacoustics* ("Furthermore, as firmly established by judicial decisions, in an action involving

multiple defendants venue and jurisdiction requirements must be met as to each defendant.").

### A.   Venue in Patent Cases Can Only Exist, if Each of the Defendants Either Resides or Has a Regular and Established Place of Business in the Forum

The 28 U.S.C. §1400(b) venue statue controls for at least domestic entities (i.e., ZTA and

ZTX). And, "[a]ny civil action for patent infringement may be brought in the judicial district where

the defendant resides, or where the defendant has committed acts of infringement and has a regular

and established place of business." *TC Heartland LLC,* 137 S. Ct. at 1516 (quoting 28 U.S.C. §

1400(b)). "The Supreme Court changed the controlling law when it decided *TC Heartland . . .* by severing § 1400(b) from § 1391(c) . . . ." *In re Micron Tech., Inc.*, No. 2017-138, 2017 WL 5474215, *6 (Fed. Cir. Nov. 15, 2017). Further, in an action involving multiple defendants, venue and jurisdiction requirements must be met as to each defendant. *Magnacoustics,* 1997 WL 592863 at *1. When formal separation of entities is preserved, activities of a parent corporation do not establish venue over a wholly-owned subsidiary of the parent corporation. *Blue Spike, LLC v. Caterpillar, Inc.*, 6:16-CV-01361-RWS, 2017 WL 4129321, *2-3 (E.D. Tex. Sep. 9, 2017).

### 1.    Residency of Defendants (Where a Defendant Resides) in Patent Cases is Determined on a District-by-District Basis, Not a State-by-State Basis

By the plain terms of the venue statute, the first way to establish venue in patent infringement cases is to file suit "in *the judicial district* where the defendant resides." 28 U.S.C. §1400(b) (emphasis added). The plain language of the venue statute, as well as the Supreme Court precedent, make clear that residence is established based on *judicial districts*, not entire states:

> [I]n a State containing more than one district, actions not local should "be brought in the district in which the defendant resides …" The whole purport and effect of [the then-venue statute at issue] … was not to enlarge, but to restrict and distribute, jurisdiction. It applied only to a State containing two or more districts, and directed suits against citizens of such a State to be brought in that district thereof in which they… resided. It did not subject defendants to any new liability to be sued out of the State of which they were citizens, but simply prescribed in which district of that State they might be sued.

*Shaw v. Quincy Mining Co.,* 145 U.S. 444, 447-448 (1892). Thus, a corporation can "be sued *only in the State and district* in which it has been incorporated." *Id.* at 449 (emphasis added).

The Supreme Court has confirmed the principle announced in *Shaw*. For example, in *Stonite Prods. Co. v. Melvin Lloyd Co.,* 315 U.S. 561 (1942), the Court applied the principle in a patent case, interpreting 28 U.S.C. §1400(b)'s predecessor, 28 U.S.C. (1940 ed.) §109. Defendant Stonite Products was a Pennsylvania corporation with its principal place of business in the Eastern District of Pennsylvania. *Melvin Lloyd Co. v. Stonite Prods. Co.*, 119 F.2d 883, 884, (3d Cir. 1941),

*rev'd,* 315 U.S. 561 (1942). But in *Stonite Products Co.*, the Court affirmed that venue over defendant Stonite Products was improper in Western District of Pennsylvania. *Stonite Prods.,* 315 U.S. at 563. The Court found that Stonite Products was only "an inhabitant of the Eastern District of Pennsylvania," not of every district in the state. *Id.* at 562. Like 28 U.S.C. §1400(b) today, the similarly-worded predecessor statute restricted venue in a patent case to "the *district* of which the defendant is an inhabitant[.]" *Id.* at 562 n.1 (emphasis added).

*Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222 (1957) supports the conclusion that the principle of *Shaw* and *Stonite* was not affected by the recodification of 28 U.S.C. (1940 ed.) §109 into 28 U.S.C. §1400(b) for the patent venue statute. In *Fourco*, for example, the defendant was sued outside its state of incorporation, and the Court relied on *Shaw* for the proposition that, in the context of venue in patent cases, "resides" means the "state of incorporation only," contrasting the restrictive patent venue statute with the permissive general venue statue,[6] which made corporation suable in judicial districts in which they were merely doing business. *Id.* at 226. In making this comparison, the Court did not *expand* the meaning of "resides" established in *Shaw*. *See id.* at 226-229. The Supreme Court reaffirmed *Fourco* in *TC Heartland LLC,* 137 S. Ct. at 1516, confirming that 28 U.S.C. § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions, and … is not to be supplemented by … § 1391(c)." *TC Heartland LLC,* 137 S. Ct. at 1519 (quoting *Fourco Glass*, 353 U.S. at 229).

Thus, for purposes of patent venue, pursuant to 28 U.S.C. §1400(b), a domestic corporation "resides" only in the judicial district in its state of incorporation that includes its principal place of business; not in districts in other States, and not in districts *within* its State. *See* 8-21 Chisum on Patents, §21.02 (2017) ("The weight of authority indicates that a corporation is a resident only of

---

[6] 28 U.S.C. § 1391(c).

the district in which it has its principal office." (citing *Vibber v. United States Rubber Co.*, 255 F. Supp. 47 (S.D. N.Y. 1966) and *California Irrigation Servs., Inc. v. Bartron Corp.*, 654 F. Supp. 1 (N.D. Calif. 1985) ("a defendant corporation resides in the district in its state of incorporation where its principal place of business is")). *Accord "A" Co. v. Consyne Corp.*, 191 U.S.P.Q. (BNA) 126 (S.D.CA 1975); *Action Commc'ns. Sys. Inc. v. Datapoint Corp.*, 426 F. Supp. 973, 974-5 (N.D. Tex. 1977); *Samsonite Corp. v. Texas Imperial Inc.*, 218 U.S.P.Q. (BNA) 325 (N.D. Tex. 1982); *Sterling Drug Inc. v. Intermedics, Inc.*, 1986 U.S. Dist LEXIS 31320 (W.D. Tex. 1986)).

Additionally, the Federal Circuit confirms.  In *In re Bigcommerce*, the Federal Circuit recognized that, "for purposes of determining venue under § 1400(b) in a state having multiple judicial districts, a corporate defendant shall be considered to 'reside' only in the single judicial district within that state where it maintains a principal place of business, or failing that, the judicial district in which its registered office is located." *Bigcommerce*, 890 F.3d at 986 (Fed. Cir. 2018).

### 2.   Venue Over Non-Resident Defendants Requires a Regular and Established Place of Business in the Forum

The second way to establish venue in patent cases, per § 1400(b), is to file suit "where the defendant has committed acts of infringement and has a regular and established place of business."

The Supreme Court's *TC Heartland* decision does not define "a regular and established place of business," pursuant to § 1400(b) of the patent venue statute. However, the Federal Circuit has defined the phrase, finding that § 1400(b) requires that: (1) "a defendant has" a (2) "place of business" that is (3) "regular" and "established." *In re Cray*, 871 F.3d at 1362. All three of these requirements must be present for proper venue to exist in a district. *Id*. Thus, the Federal Circuit instructed, there first must be a physical place of business in the district, not merely a virtual space or electronic communications between persons in the district. *Id*. Second, the place of business must be regular and established–sporadic activity or presence cannot create venue. *Id*. Third, the

regular and established place of business must be a place *of the defendant*, not solely a place of the defendant's employee or of an entity that is not the specific defendant. *Id*. at 1363.

Considerations relevant to whether a place is attributable to the defendant include: (1) whether the defendant exercises possession or control over the place; (2) whether the defendant conditioned employment upon an employee's continued residence at the place or continued performance of business from the place; and (3) whether the defendant holds the place out as a place for its business. *Id*. Therefore, when an employer does not own, lease, or rent an employee's home, select the location of the employee's home, direct the employee to store inventory or conduct business at the employee's home, or condition employment or support upon the maintenance of the employee's home as a place of business of the employee, the employee's home is not attributable to the employer. *Id*. at 1364-66. Moreover, an employee's home is not a place of business for the employer merely because the employer provides a salary, administrative support, or reimbursement of phone, internet, and business-related travel expenses. *Id*.

An agency relationship is not sufficient to create venue. For example, "the relationship of manufacturer and soliciting agent, without more (e.g., payment of office expenses, maintaining stocks of merchandise in the forum district, consummated sales in the forum district), does not render the business of the solicitor a 'regular and established place of business' of the manufacturer." *McGah,* 166 F. Supp. at 666. Similarly, "[t]he mere fact that defendant hires a sales representative who in turn rents offices to sell defendant's products is insufficient," even when the sales representative advertises defendant's products and processes complaints for the defendant. *Brevel Prod. Corp.*, 202 F. Supp. at 826-27.

The mere presence of supervisory employees in a district is also not sufficient to create venue. *L. D. Schreiber Cheese Co., Inc. v. Clearfield Cheese Co*., 495 F. Supp. 313, 317 (W.D.

Pa. 1980). E.g., "two executive employees" acting as liaisons between the defendant and another company is not sufficient for a "regular and established place of business" in district. *Id.* at 318.

### B.   Venue Over a Defendant Cannot Be Established by Imputing the Location of Third Parties Without Collapsing the Corporate Form

The law is clear that venue cannot be imputed to a defendant based on the contacts of a third party unless there is a reason to collapse the separate corporate forms. *See, e.g.*, *EMED Techs. Corp. v. Repro-Med Sys., Inc.*, No. 2:17-CV-728-WCB-RSP, 2018 WL 2544564, at *2 (E.D. Tex. June 4, 2018) (Bryson, J.) (collecting cases). The Federal Circuit has emphasized that any physical location forming the basis of venue in a district must be "*of the defendant*," and "not solely a place of the defendant's employee." *In re Cray*, 871 F.3d at 1363 (emphasis in original).

Instructive on the issue is *Board of Regents v. Medtronic PLC*, Case No. A-17-CV-0942-LY, 2018 WL 4179080 (W.D. Tex. July 19, 2018) (Yeakel, J.). Initially, the court there found that defendant Medtronic had "ratified" in-district locations of a separate company for patent-venue purposes by listing the place of business on Medtronic's website and directories, and placing a Medtronic sign on the exterior of the building. *Id.* at *2. On motion for reconsideration, the court found that Medtronic in fact had **not ratified** any of the in-district locations, because the different Medtronic entities maintained corporate formalities. *Id.* Thus, absent collapsing the corporate forms, third parties' locations cannot form the basis of venue over a defendant.[7]

---

[7] *See also e.g. Interactive Toybox v. Walt Disney Co.*, Case No. 1:17-CV-1137-RP, 2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) (not imputing retail Disney stores to parent Disney company for venue purposes); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916 (E.D. Va. 2017) (not imputing retail Lego stores to parent Lego company for venue purposes); *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted* 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018) (third-party distribution centers insufficient); *Hildebrand v. Wilmar Corp.*, No. 17-cv- 02821, 2018 WL 1535505, at *3 (D. Colo. Mar. 29, 2018) (no venue where "the places of

## V.    Argument I: The Amended Complaint Should Be Dismissed

WSOU's assertions regarding the alleged residency of ZTA and ZTX are incorrect and must be disregarded. Dkt. 38, ¶ 22. Even as a Texas Corporation—with no physical business location in Texas—ZTX is only subject to venue in the NDTX where its registered agent rests. Additionally, ZTA likewise is only subject to venue in the NDTX where its principal place of

---

business on which Mr. Hildebrand bases venue are the physical locations of Wilmar's distributors, not those of Wilmar"); *Automated Packaging Sys., Inc. v. Free-Flow Packaging Int'l, Inc.*, No. 5:14-cv- 2022, 2018 WL 400326, at *9 n.8 (N.D. Ohio Jan. 12, 2018) ("While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI."); *Reflection, LLC v. Spire Collective LLC*, No. 17-cv-1603, 2018 WL 310184, at *3 (S.D. Cal. Jan. 5, 2018) ("[A] distributor or subsidiary of a parent corporation selling the infringer's product does not demonstrate that a defendant has a regular and established business in this district."); *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 611 (N.D. Tex. 2017) (presence of third-party sales representatives insufficient); *Patent Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *6 (S.D. Fla. Nov. 1, 2017) (physical locations of defendant's dealers in the district "are irrelevant to the Court's analysis under § 1400(b)"); *CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-00482, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (holding that physical location of distributors does not establish venue because the defendant "does not own, rent, lease, or occupy these locations or any other property or equipment in the state"); *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-03153, 2017 WL 4512501, at *3 (M.D. Tenn. Oct. 10, 2017) (holding that "business connections with distributors, retailers, and consumers in this district" are insufficient); *Talsk Research Inc. v. Evernote Corp.*, No. 16-cv-2167, 2017 WL 4269004, at *4 (N.D. Ill. Sept. 26, 2017) ("The Federal Circuit's decision in *Cray* leaves no room for Plaintiff to argue that the handful of non-employee, independent contractors present in this District constitute a 'regular and established place of business' for Defendant within the meaning of § 1400(b)."); *Boston Sci.. Corp. v. Cook Grp. Inc.*, 269 F. Supp. 3d 229, 248 (D. Del. 2017) ("[A] regular and established place of business does not arise solely from a defendant simply shipping goods into a district—whether to an individual or for distribution by third parties."); *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-cv-379, 2017 WL 3980155, at *17 (D. Del. Sept. 11, 2017) (same).; *Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, No. 17-cv-01803, 2017 WL 4155347, at *7 (N.D. Cal. Aug. 29, 2017) (using third-party company to sell products is insufficient); *OptoLum, Inc. v. Cree, Inc.*, No. 16-cv-03828, 2017 WL 3130642, at *6 (D. Ariz. July 24, 2017) (selling infringing products at Home Depot stores in the district does not establish a place of business for the manufacturer); *LoganTree LP v. Garmin Int'l, Inc.*, No. SA-17-CA-0098, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) ("It is well settled that the mere presence of independent sales representatives does not constitute a 'regular and established place of business' for purposes of Section 1400(b)." (quoting *Kabb, Inc. v. Sutera*, No. 91-cv-3551, 1992 WL 245546, at *2 (N.D. Tex. Sept. 4, 1992))).

business rests. Lastly, no Defendant has committed the alleged acts of infringement in the WDTX (or elsewhere), and each Defendant lacks a regular and established place of business in this District. Thus, under the only applicable venue statute for domestic entities, §1400(b), ZTA and ZTX are not properly venued in the WDTX, and the cases are defective and should be dismissed.

### A.     28 U.S.C. §1391 Does Not Apply for ZTA And ZTX

Venue must be established against ZTA and ZTX separately. *Magnacoustics, Inc.*, No. 97–1247, 1997 WL 592863, at *1. 28 U.S.C. §1400(b) is the sole basis for venue in patent actions for domestic defendants, *TC Heartland,* 137 S.Ct. at 1517, and ZTA is a New Jersey corporation, Wood Decl. ¶ 2, and ZTX is a Texas corporation, Shan Decl. at ¶ 3. 28 U.S.C. §1391 is inapplicable and does not provide a basis for venue against ZTA or ZTX in the WDTX or any other district.

### B.     Venue is Improper for ZTA & ZTX Under the Prong 1 of 28 U.S.C. §1400(b)

28 U.S.C. §1400(b) offers two alternative bases for venue in patent infringement cases: (1) "the judicial district where the defendant resides" or (2) a judicial district "where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* Under the first prong of § 1400(b), a domestic (US) corporation resides only in the state of its incorporation for purposes of the patent venue statute. *TC Heartland*, 137 S. Ct. at 1520.  In *In re Bigcommerce*, the Federal Circuit held that "for purposes of determining venue under § 1400(b) in a state having multiple judicial districts, a corporate defendant shall be considered to 'reside' only in the single judicial district within that state where it maintains a principal place of business, or failing that, the judicial district in which its registered office is located." *In re Bigcommerce*, 890 F.3d at 986 (Fed. Cir. 2018).  Neither ZTA nor ZTX are incorporated in the WDTX, nor maintain their principal place of business in WDTX, nor have its registered office (or registered agent's office) located in the WDTX; thus, neither resides in the WDTX for purposes of venue.

### 1.      ZTA Does Not Reside in This District

A corporation may not be sued under the first prong of the venue statute (residency) outside its state of incorporation. *See TC Heartland LLC*, 137 S.Ct. at 1516-17.   ZTA is a New Jersey corporation. Dkt. 38,¶ 4; Wood Decl. at ¶ 2. In view of *In re Bigcommerce*, for purposes of determining venue, a corporation resides only in the district where it maintains a principle place of business.  ZTA maintains its principle business in Richardson, Texas, in the NDTX. Wood Decl. at ¶ 3. Thus, under the first prong of § 1400(b), ZTA is a resident of NDTX, and venue in the WDTX would be improper, by law. *See* 28 U.S.C. § 1400(b); *Fourco Glass*, 353 U.S. at 228-29.

In error, the Amended Complaint alleges that ZTA "has maintained a place of business at 6500 River Place Blvd., Austin, TX 78730."  Dkt. 38, ¶ 22. Most telling is that the Amended Complaint fails to allege that ZTA maintained this place of business at the time of the Complaint's filing (or any complaint for these matters), *and* it fails to allege that the office is a principal place of business. Further, neither is true, and ZTA did not maintain this Austin address at the time of any WSOU I or WSOU II filing date. Wood Decl. at ¶¶ 4 and 7. In fact, ZTA has not had a physical presence in the WDTX, since at least July 31, 2015. *Id*.; *see also* Lavenue Decl. Ex. B, Google Street View for 6500 River Place Boulevard (ZTA is not on the sign identifying businesses in the building.). As such, venue against ZTA in the WDTX is improper under Rule 12(b)(3).

### 2.      ZTX Does Not Reside in This District

Again, a corporation may not be sued under the first prong of the venue statute (residency) outside its state of incorporation. *See TC Heartland LLC*, 137 S.Ct. at 1516-17. And for "purposes of determining venue under §1400(b) in a state having multiple judicial districts, a corporate defendant shall be considered to 'reside' only in the single judicial district within that state where it maintains a principal place of business, or, failing that, the judicial district in which its registered office is located." *BigCommerce*, 890 F.3d at 986.  It is true that ZTX is a Texas corporation. Shan

Decl. at ¶ 3. ZTX, however, does not have a principal place of business anywhere in Texas—including the WDTX. Shan Decl. at ¶ 2. And, the record is clear that ZTX did not have a registered agent in the WDTX at the time of the WSOU II original complaint filing. Shan Decl. at ¶ 21; *see also Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017); and *Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F. Supp. 2d 648, 652 (N.D. Tex. 2000) ("The court is to determine whether venue properly existed at the time the plaintiff's complaint was filed.").

In error, the Amended Complaint alleges that ZTX "has maintained a place of business at 7000 N Mo-Pac Expressway 200, Austin, TX [78730]."  Dkt. 38, ¶ 22. It is most telling that the Amended Complaint fails to allege that ZTX maintained this place of business at the time of the complaint filing (any complaint for these matters), *and* further fails to allege that the office is a principal place of business. The Amended Complaint further alleges that ZTX maintains a "principal place of business in Austin, Texas," Dkt. 38, ¶ 5, but it fails to identity that alleged location *and* fails to identify whether that alleged location is connected to the 7000 N location.

ZTX does not maintain any place of business within the State of Texas, Shan Decl. at ¶ 11. And, for purposes of venue purposes, the residency of ZTX is determined by its registered office. *BigCommerce*, 890 F.3d at 986. ZTX's registered office is located at CT Systems, 1999 Bryan St. Suite 900, Dallas, TX, 75201. *Id.* at ¶ 21. This is in Dallas County, which is in the Northern District. *See*  https://www.usmarshals.gov/district/navigation/tx.htm.  Consequently, ZTX is solely a resident of the NDTX for purposes of residency-based patent venue. As such, venue against ZTX in the WDTX is improper under Rule 12(b)(3), and WSOU has cited no evidence otherwise.

## C.    Venue is Improper Under Prong 2 of 28 U.S.C. §1400(b)

As discussed above, under the second prong of 28 U.S.C. § 1400(b), venue for a defendant in a patent case is proper in any district in which the defendant has allegedly committed acts of infringement and maintains a regular and established place of business. A regular and established

place of business must be a physical place of business, not merely a virtual space or electronic communications between persons in the district. *In re Cray*, 871 F.3d at 1362. Further, the place of business must be regular and established, as sporadic activity or presence cannot create venue. *Id*. Finally, the regular and established place of business must be a place *of the defendant*, not solely a place of the defendant's employee or of an entity that is not the specific defendant. *Id*. at 1363. All three of these requirements must be present for proper for venue to exist. *Id*. at 1360.

### 1. ZTA Has Not Committed Acts of Infringement and Does Not Maintain a Regular and Established Place of Business in this District

The second prong of § 1400(b) requires the plaintiff prove two separate elements to establish venue: that "the defendant has committed acts of infringement" *and* "has a regular and established place of business" in the district. As to the first element, outside conclusory language with respect to *all* Defendants, Dkt. 38, ¶¶ 9 and 22, the Amended Complaint fails to plead specific acts of infringement occurring in the WDTX.  To show the second element, WSOU must identify a place of business meeting three independent requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *Cray*, 871 F.3d at 1360. A "'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *Google*, 949 F.3d at 1345. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Cray*, 871 F.3d at 1360. Plaintiff's venue allegations in the Amended Complaint fail to meet all of these requirements.

First, the Amended Complaint fails to identify a sufficient physical place in this district— because there is none. Venue is measured at the time suit is filed, *Pers. Audio*, 280 F. Supp. at 931, so several pleaded facts from the Amended Complaint should be disregarded as irrelevant. For instance, the Amended Complaint references the 6500 River Place location as associated to ZTA,

however, this location closed five years earlier on at least July 31, 2015. Wood Decl. at ¶ 4. Plaintiff fails to identify any other physical location of ZTA in the WDTX, past or present. WSOU cannot plead otherwise, as no ZTA physical place exists in the WDTX.  Wood Decl. at ¶¶ 4, 7-9.

Second, ZTA does not maintain a "regular place of business" in the WDTX, especially when applying the test set forth by the Federal Circuit in *In re Cray*. *See In re Cray*, 871 F.3d at 1361-64. For example, the only identified address that may remotely be a place of business, the 6500 River Place location in Austin, Texas, but this location was closed long before suit was filed, thus it is not a "regular and established," and Plaintiff does not suggest that it is. Dkt. 38, ¶ 22.

Additionally, ZTA has no regular and established place of business in the WDTX. Wood Decl. at ¶ 8. ZTA has no physical presence, such as a storefront, physical facility, or owned, leased, or rented office space, in the WDTX. Wood Decl. at ¶ 9. ZTA stores no literature, documents, stock, displays, samples, products or any other likely sources of proof in this litigation in the WDTX. Wood Decl. at ¶ 11. ZTA does not own, lease, operate, manage, maintain, or otherwise exercise possession or control over offices, warehouses, stores, servers, computers, furniture, storage facilities, distribution facilities, post boxes, showrooms, manufacturing facilities, or other facilities, or other real or personal property in the WDTX. Wood Decl. at ¶ 17. In sum, ZTA does not now have, and has not at any time since at least as early as July 31, 2015, had any place of business (including without limitation any physical place of business, any regular and established place of business, or any place of business of ZTA, within the WDTX. Wood Decl. at ¶ 4.

ZTA does not conduct any business (including any banking activities), out of any location in the WDTX; and has not marketed, advertised, or made representations that it has any place of business, address, telephone listing, storefront, or sign on any building in the WDTX since at least since July 31, 2015, including without limitation telephone directories and websites. *Id.* at ¶ 7; *see*

*also* Lavenue Decl. Ex. B, Google Street View for 6500 River Place Boulevard. ZTA does not make, sell, or offer for sale any handsets or network devices (whether for end use, distribution, third-party demonstrations, qualification testing, or any other commercial purpose; whether accused in any of these cases or not; and whether sold or offered for sale in the United States or not) from the WDTX. *Id.* at ¶ 6. ZTA does not provide any commercial services in the WDTX. *Id.* at ¶ 14. ZTA has no bank accounts in the WDTX. *Id.* at ¶ 15.  ZTA has no employees, directors, or other personnel in the WDTX conducting its business. *Id.* at ¶ 10. ZTA has no agents assisting in production, storage, transport, and exchange of goods or services or otherwise carrying out the business of ZTA in the WDTX. *Id.* at ¶ 13. ZTA is not recruiting employees from the WDTX. *Id.* at ¶ 18. In short, ZTA has no presence in the WDTX, including likely witnesses. *Id.* at ¶ 16.

Third, ZTA does not own any business locations in this District. And, to the extent Plaintiff is trying to blur distinctions between locations of different ZTE entities—no ZTE entity has a place of business in this District (WDTX)—and Plaintiff cannot show venue as to any of those entities because it fails to show any physical location currently belonging to any ZTE entity in the WDTX.

Thus, like the petitioner in *In re Cray*, ZTA lacks any regular and established place of business within the WDTX. Accordingly, given the absence of residency, venue is not proper in this District and the case should be dismissed. *See* 28 U.S.C. § 1400 (b); *In re Cray*, 871 F.3d at 1364-67. As a matter of law, venue is improper under Rule 12(b)(3). *Google*, 949 F.3d at 1343.

### 2.      ZTX Has Not Committed Acts of Infringement and Does Not Maintain a Regular and Established Place of Business in this District

Again, like above for ZTA, the second prong of § 1400(b) requires the plaintiff prove two separate elements to establish venue: that "the defendant has committed (alleged) acts of infringement" ***and*** "has a regular and established place of business."  As to the first element, outside conclusory language with respect to *all* Defendants, Dkt. 38, ¶¶ 9 and 22, the Amended

19

Complaint fails to plead specific acts of infringement in the WDTX. With respect to second element, the Amended Complaint fails to meet all elements to establish venue under *Cray* for ZTX.

First, like the allegations for ZTA, the Amended Complaint fails to identify a physical place in this district for ZTX—because there is none. Venue is measured at the time suit is filed, *Pers. Audio*, 280 F. Supp. at 931, so several pleaded facts from the Amended Complaint should be disregarded as irrelevant (offices from yesteryear do not count). For instance, the Amended Complaint references the Plaza 7000 location in Austin, which closed more than two years ago (well before the WSOU I complaint filing), *see* Shan Decl. at ¶ 14.  The Amended Complaint fails to identify any other physical location of ZTX in the WDTX, past or present. WSOU cannot plead otherwise, because no such ZTX physical place exists in the WDTX.  Shan Decl. at ¶¶ 11-21.[8]

Second, ZTX does not maintain a "regular place of business" in the WDTX, especially when applying the test set forth by the Federal Circuit in *In re Cray*. *See In re Cray*, 871 F.3d at 1361-64. For example, the only identified address that may remotely be a "place of business," the Plaza 7000 location in Austin, closed long before suit was filed, thus it is not a "regular and established," and Plaintiff does not suggest that it is. Dkt. 38, ¶ 22; *see also* Shan Decl. at ¶ 14.

ZTX has no place of business in the WDTX. Shan Decl. at ¶¶ 11-12. ZTX does not market or advertise as having a place of business in the WDTX. *Id.* at ¶ 13. ZTX does not conduct any business (including any banking activities) out of any location in the WDTX. *Id.* at ¶ 14. And ZTX does not advertise or represent that it has any place of business, address, or telephone listing in the WDTX. *Id.* at ¶ 18. No employees of ZTX live or work at any location in the WDTX. *Id.* at ¶ 19.

---

[8] Since ZTX moved from the WDTX on August 31, 2018, ZTX mistakenly paid property taxes in Travis County in 2019. ZTX has since filed a Final Rendition in Travis County indicating that the taxes were paid in error, as ZTX moved its business on August 31, 2018 and no longer has assets in the county. Shan Decl. ¶¶ 15-17; Ex. D, Travis Central Appraisal District, Form for Rendition of Taxable Property.

And, 35 U.S.C. § 271(a) requires, *inter alia*, that a complaint at least plead whether the alleged infringer "makes, uses, offers to sell, [] sells... or imports" a patented invention. There is no basis to assert that ZTX does not "make, offer[] to sell, or sell[]" any products (and cannot make, offer to sell, or sell any device accused by WSOU). Shan Decl. at ¶ 8. ZTX's only use of any handsets or network devices is for internal purposes. *Id.*at ¶¶ 9-10. Thus, any importation is only for the purpose of such internal use. *Id.* at ¶¶ 9-10. Since ZTX has no place of business in the WDTX, any nonincidental use (or importation for such use) by ZTX occurs outside of the WDTX. *Id.* at ¶ 11. Consequently, for this additional reason, venue against ZTX is improper here.

Third, ZTX does not own any business locations in this District. And, to the extent Plaintiff is trying to blur distinctions between locations of different ZTE entities—no ZTE entity has a place of business in this District—and Plaintiff cannot show venue as to any of those entities because it fails to show any physical location currently belonging to any ZTE entity within the WDTX.

Thus, like the petitioner in *In re Cray*, in this case, it is clear that ZTX lacks a regular and established place of business within the WDTX. Accordingly, venue is not proper in this District, and the case should be dismissed. *See* 28 U.S.C. § 1400 (b); *In re Cray*, 871 F.3d at 1364-67. Therefore, as a matter of law, venue is improper under Rule 12(b)(3). *Google*, 949 F.3d at 1343.

### D.      28 U.S.C. §1400(b) is Inapplicable to ZTE Corp.

28 U.S.C. §1391 is the sole basis for venue in patent infringement actions against defendants that do not reside within the United States, *Slyce Acquisition, Inc.*, 422 F.Supp.3d at 1197-98, and ZTE Corp. is a Chinese corporation, Dkt. 27, Kuang Decl. at ¶ 4, so 28 U.S.C. §1400(b) is inapplicable and does not provide a basis for venue for ZTE Corp. in the WDTX or any other.

## VI.   Argument II: Should the Court Not Dismiss These Cases For The Lack of Venue, Then The Cases Should Be Transferred to the Northern District of Texas

These cases should be dismissed for improper venue—as discussed above, venue is improper for at least ZTA and ZTX. Alternatively, if the Court declines to dismiss, Defendants respectfully request transfer for all Defendants to the NDTX, a proper and more convenient venue.

A district court may transfer a civil action to any district in which it might have been filed "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see also* 28 U.S.C. § 1406(a). To determine whether a case should be transferred, the court pursues a two-pronged inquiry. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (directing the EDTX to transfer). First, the court determines whether the case originally could have been brought in the proposed transferee district. *Id.* As discussed above, a patent infringement action may be brought "where the defendant resides, or where the defendant has [allegedly] committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). If the threshold inquiry is met, a court weighs convenience of the transferee district and the transferor district based on private and public interest factors. *See, e.g.*, *Indus. Tech. Research Inst. v. LG Corp.*, et al., No. 6:10-cv-628 LED-JDL, 2011 WL 10622246, at *2 (E.D. Tex. Nov. 29, 2011) (granting motion to transfer to District of New Jersey). The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen of Am., Inc.*, 545 F.3d at 315. The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law." *Id.*

"Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." *Frederick v. Advanced Fin. Sols., Inc.*, 558 F.Supp.2d 699, 704 (E.D. Tex. 2007). The plaintiff's choice of forum, however, is entitled to no weight in determining whether to transfer venue. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319-20 (Fed. Cir. 2008) ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."). This is particularly true where a plaintiff's recent and ephemeral contacts with a forum "are nothing more than a construct for litigation." *See, e.g.*, *Network Protection Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-00224, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corp.*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011); *In re Zimmer Holdings, Inc*., 609 F.3d 1378 (Fed. Cir. 2010)).

"[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). Thus, even though "[t]he analysis may not show that the transferee forum is *far* more convenient[,] . . . that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is '*clearly* more convenient.'" *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014). Based on the calculus for convenience transfer, these cases could have (and should have) been brought in the NDTX, where ZTA has its principal place of business and ZTX has its registered agent. The convenience factors weigh in favor of transfer, with no factor weighing against it. Defendants therefore request that the Court transfer this case to the NDTX.

## A.     WSOU's Amended Complaint Moots Transfer Briefings for All Defendants

As an initial matter, WSOU still erroneously maintains that the pre-amended complaint transfer briefings are ripe (i.e. not mooted by the Amended Complaint). The substance of those disputes are carried out in several additional motions and briefings, but a summary of the

controlling case supporting Defendants positions—that the Amended Complaint mooted *all* the briefings for *all* defendants—are provided herein.  It is undisputed that the Amended Complaint moots all Motion to Dismiss briefings for all three Defendants. *See* Dkt. 41.  And, it is undisputed that the Amended Complaint moots the Motion to Transfer briefing with regards to ZTE Corp. *See* Dkt. 37 at 1.  WSOU inexplicably opposes, applying the same reasoning to ZTA and ZTX, and WSOU disputes whether the Amended Complaint moots the Motion to Transfer briefings with respect to these two Defendants.  *See* Dkt. 41.  WSOU's position is erroneous, and WSOU fails to provide any support for its position—as such, Defendants file this new Motion to Transfer herein

On the issue of an Amended Complaint, it is recognized that "an amended pleading supersedes the original ***for all purposes***." *Nolen v. Lufkin Indus., Inc.*, 466 F. App'x 895, 898 (Fed. Cir. 2012) (emphasis added); *see also King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and render it of no legal effect").  Of course, it is within the district court's discretion[9] to deem if a subsequently filed amended complaint renders motions to transfer moot or applicable.  *Luminati Networks Ltd. v. BiScience Inc.*, 2019 WL 2084426, at*2 (E.D. Tex. 2019).  Courts recognize that the purpose of exercising this discretion is to "save time and resources . . . not to unfairly tie the hands of the movant in situations where it is not." *Id*.  Here, the "plaintiff should not be allowed to amend its complaint in response

---

[9] In the rare instances where courts exercise discretion on the application of an amended pleading, it is *not to* deny the motion to transfer, but rather *to grant it* and forgo needless additional briefing.  For instance, in granting the opposed motion to transfer filed pre-complaint amending, the *WowWee* court exercised its discretion and deemed that the motion to transfer was still applicable.  *WowWee Group Ltd. v. Wallace*, 2012 WL 13013022, at *1 (C.D. Cal. 2012).  Similarly, in *Krause*, the court considered the original complaint ripe for analysis in order to grant the pending motion to transfer and reduce unnecessary briefing. *Donald Krause v. Williams Chippas et. al*, 2007 WL 4563471, at *2-3 (N.D. Tex. 2007).  Thus, the Motion to Transfer briefings for *all Defendants* here should be deemed mooted by WSOU's Amended Complaint, or if deemed applicable, the Court should grant the motions and transfer these cases.

to a motion and then require the movant to rest on its outdated briefing." *Id*. Given this law, the

Motion to Transfer briefings for *all Defendants* are fully mooted by WSOU's Amended Complaint

**B.    Transfer of these Cases to the Northern District of Texas Is Appropriate Here**

Transfer to the NDTX under § 1404(a) or § 1406(a) is proper here.  This Court should

afford little weight to the non-practicing entity-WSOU's connections to the WDTX. Instead, the

focus should be on the weight of evidence and related activity in the NDTX.  Both parties agree

that the cases for all ZTE Defendants should collectively remain together, Dkt. 37 at 8. Thus, if

the Court does not dismiss all the cases for all the Defendants, then the Court should transfer all

Defendants together to the NDTX. This case could have—and *should have*—been brought in the

NDTX, because ZTA's principal places of business is located in the NDTX, in Richardson, and

ZTA is the proper party for defending against the accused patent allegations.  With respect to ZTX,

ZTX did not maintain any physical place of business in Texas at the time of filing of this lawsuit,

and ZTX's registered agent was located in Dallas, thus, the NDTX.  Dkt. 23, Ex. 1 Shan Decl. at

¶ 18.  Thus, for ZTE, the NDTX is more convenient than WDTX, per § 1404(b).  Because all of

the private and public factors all weigh in favor of favor to the NDTX, transfer is appropriate.

**1.    The Private Interest Factors Weigh in Favor of Transfer to the NDTX**

**a.    Ease of Access To Sources of Proof Strongly Favors Transfer**

Accessibility to sources of proof is an important private interest factor that weighs in favor

of transfer. *Volkswagen of Am., Inc.*, 545 F.3d at 315. "The critical inquiry 'is relative ease of

access, not absolute ease of access.'" *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir.

2013) (citations omitted). Here, sources of evidence are far more accessible in the NDTX.

For instance, any discovery taken of the Defendants, and in particular for ZTA, where the

heart of the accused activity lies, would be more appropriate in the NDTX, at the location of ZTA.

ZTA has its principal place of business in the NDTX. And in patent cases, "the bulk of relevant

evidence usually comes from the accused infringer." *Genentech*, 566 F.3d at 1345. Most, if not all, of Defendant's witnesses and physical evidence relating to the accused instrumentalities are located at ZTA's principal place of business in Richardson, in the NDTX, making the NDTX clearly the most convenient venue. ZTA stores likely sources of proof for these alleged infringements at the Richardson headquarters.  Wood Decl., ¶ 11. Most of the discoverable documents and information within ZTA's possession, custody, or control are located at either (1) its Richardson headquarters (financial, marketing, and technical data); or (2) at an outside counsel's office in Dallas County (for the custody over technical documents and source code). *Id*.

Additionally, further tipping the transfer analysis in favor of NDTX, ZTA's employees, and likely witnesses, are also located in the NDTX. It would be much more convenient for the expected witnesses from ZTA's principal office Richardson to attend trial for these matters in the NDTX, where ZTA has its headquarters, than it would be for them to travel to Waco, Texas.

Additionally, by WSOU's own account, the crux of these cases geographically center around ZTA, in the NDTX.  In WSOU's Amended Complaint, WSOU alleges that Accused Products are sold and/or licensed from ZTA's headquarters in Richardson, Texas (in the NDTX). Dkt. 38, ¶¶11 and 13.  WSOU further alleges that customers are "targeted . . . through [ZTA's] website" and that ZTA ships the Accused Products to customers from the Richardson headquarters (in the NDTX).  *Id*., ¶¶12-13.  WSOU also alleges that the Richardson, Texas headquarters (in the NDTX) handle "troubleshooting or other technical support" of the devices sold in the United States. *Id*., ¶14.  WSOU alleges that ZTA issues press releases from Richardson on the Accused Products.  *Id*., ¶¶15-17.  All of these allegations are geographically associated with the NDTX.

On the other hand, if WSOU has evidence or witnesses relevant to the issues in dispute in the present cases located in the WDTX, it is minimal—favoring transfer. *Groupchatter, LLC v.*

*Itron, Inc.*, No. 15-900, 2016 WL 2758480, at *3 (E.D. Tex. 2016) (granting motion to transfer due to the lack of relevant evidence in District); *Intelligent Automation Design, LLC v. Zimmer Biomet Holdings, Inc. et al.*, No. 5:16-cv-11-CMC, 2016 WL 4424967 (E.D. Tex. 2016) (same).

WSOU appears to have been formed on January 7, 2020, Lavenue Decl., Ex. C, Texas Comptroller of Public Accounts Taxable Entity Search result for "WSOU Investments," , just months before filing WSOU I. This ephemeral connection to WDTX indicates a "classic case where the plaintiff is attempting to game the system" in anticipation of litigation, with its weak connection to this District. *Zimmer Holdings, Inc.*, 609 F.3d at 1381-82 (directing the EDTX to transfer). "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *Microsoft Corp.*, 630 F.3d at 1364 (ordering transfer where plaintiff incorporated under Texas laws and opened an office in Tyler shortly before filing suit). The Federal Circuit has also made clear that a Plaintiff cannot manufacture ties for venue. *See In re Apple, Inc.*, 456 Fed.Appx. 907, 908–09, 2012 WL 112893, at *1 (Fed. Cir. 2012) ("[C]ourts should not 'honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient.'") (citing *Microsoft Corp.*, 630 F.3d at 1364). Accordingly, the first factor strongly favors transfer.

### b. The Cost of Attendance For Willing Witnesses Favors Transfer

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343; *see also Nintendo*, 589 F.3d at 1198-99 (weighing the travel burden and disruption to work and family for trial witnesses). As noted by the Fifth Circuit, "it is an 'obvious conclusion' that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden. *See Volkswagen of Am.*, 545 F.3d at 317. (citation, quotation marks, and brackets omitted). "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family,

and community." *See id.* Additionally, "[b]ecause it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Intelligent Automation Design*, 2016 WL 4424967 at 9; *Groupchatter*, 2016 WL 2758480 at *4 (quoting *In re TS Tech USA Corp.*, 551 F.3d at 1320 (citations omitted)).

In this case, to the extent ZTA employees have knowledge relevant to WSOU's allegations, most of these employees work or reside at the ZTA's headquarters in Richardson, TX—over 100 miles away from Waco. All ZTE-related personnel located in the United States likely reside with ZTA at Richardson. Thus, the NDCA would be far less costly and much more convenient for witnesses from ZTA's principal place of business in Richardson. Here, where "most witnesses and evidence [are] closer to the transferee venue" and "few or no convenience factors [favor] the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198 (overturning denial of motion to transfer). This factor weighs strongly in favor of transfer.

### c.     The Remaining Private Interest Factors are Neutral

The remaining private interest considerations concern problems related to the ease, expense, and expediency of trial. These practical problems include those "rationally based on judicial economy." *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 6:13-cv-00919-JDL, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 17, 2014). Given the early stage of this proceeding, this private interest factor is neutral. Also, WSOU fails to identify any reason why this factor is not neutral.

### 2.     The Public Factors Weight in Favor of Transfer to the NDTX

### a.     The NDTX Has A Substantial Connection To and Local Interest In Adjudicating This Case

The NDTX has a significant interest in this dispute because (1) ZTA has its principal place of business in that District and ZTX has its registered agent in that District; and (2) WSOU's allegations call into question the work and reputation of ZTE-related personnel residing or conducting business in the NDTX. *See, e.g.*, *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (transferee district's local interest is strong because case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"). In contrast, the WDTX has no meaningful connection to this dispute. WSOU's litigation-manufactured and barely-detectable presence does not outweigh the NDTX's interest. *See Microsoft*, 630 F.3d at 1364 (rejecting that the court must honor "connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient"); *Software Rights Archive v. Google, Inc.*, No. 2:07-cv-00511-CE, 2010 U.S. Dist. LEXIS 73972, at *16 (E.D. Tex. July 22, 2011) ("Establishing a principal place of business in this district shortly before filing suit does not create a local interest.").

In fact, WSOU's contacts with *any* forum, even including WDTX, are purely ephemeral, and this Court should afford WSOU's contacts to this forum with little weight because they remain untethered to this suit. The Federal Circuit recently underscored this factor in *In re Apple*, by minimizing the importance of the "parties' significant connections to each forum writ large," but rather redirecting the analysis to the "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple*, 2020-135, slip op. at 17 (Fed. Cir. Nov. 9, 2020) (original emphasis). Thus, great weight should be afforded to ZTA's contacts with NDTX that give rise to this suit—as alleged by WSOU. *See In re Apple*, 2020-135, slip op. at 18 (Fed. Cir. Nov. 9, 2020). For instance, WSOU was formed just two months before filing the original lawsuit, and WSOU lacks any real connection to WDTX. To the extent WSOU has any ties to the WDTX,

it is WSOU, not ZTE, that alleges in the Amended Complaint that significant factors pertaining to accused infringement are connected to ZTA's Richardson headquarters, in the NDTX. WSOU cannot dispute that transfer to NDTX promotes judicial efficiency, at least because all relevant facilities *pertaining to the alleged infringement* are in the NDTX, and the most relevant evidence and witnesses *pertaining to the alleged infringement* are also in NDTX.  WSOU will seek discovery from that District. Further, any WSOU connections from the WDTX would not pertain to the events that gave rise to this suit.  As such, this factor favors transfer to the NDTX.

### b.    The Remaining Private Interest Factors are Neutral

The remaining public interest factors are neutral because federal patent law will apply to this case, and WDTX and NDTX are both capable of adjudicating patent claims. Additionally, the court congestion statistics suggest the administrative congestion factor is neutral as well.

## VII.   Conclusion: This Case Should Be Dismissed or Transferred[10]

This Court should hold WSOU to its deficient Amended Complaint by dismissing these suits for lack of proper venue under Fed. R. Civ. P. 12(b)(3) for each and every Defendant.  If the Court is not inclined to dismiss these cases, the cases should be transferred to the NDTX for all Defendants.  Finally, a stay of the case pending resolution of these motions would be appropriate.


DATED:  December 4, 2020                    Respectfully submitted,


                                            */s/Lionel M. Lavenue*
                                            Lionel M. Lavenue

---

[10] Defendants further submit that these cases should be stayed, pending resolution of this Motion to Dismiss, or in the alternate to Transfer. Such a stay is appropriate in view of *In re Apple*. To save party resources and save the Court's judicial resources, a stay is appropriate in this case, in view of the recent Fed. Cir. decision, *In re Apple*. Here, as in *In re Apple*, "disposing of [the motion to transfer] should unquestionably take top priority." *In re Apple* at 5. It would be improper to proceed with the scheduled tasks before the consideration of a pending motion to dismiss, or in the alternate to transfer.  ZTE also plans to file a forthcoming Motion to Stay of all of these cases.

Virginia Bar No. 49,005
lionel.lavenue@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, VA 20190
  Phone:  (571) 203-2700
  Fax:      (202) 408-4400

  Attorney for Defendants,
  ZTE Corporation
  ZTE (USA), Inc.
  ZTE (TX), Inc.

## **CERTIFICATE OF CONFERENCE**

The parties complied with Local Rule CV-7(i). On November 20, 2020 Defendants'

counsel conferred with Plaintiff's counsel via telephone, and on Plaintiff's counsel confirmed that

Plaintiff opposes the transfer relief sought in this motion.

*/s/Lionel M. Lavenue*

Lionel M. Lavenue

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on December 4, 2020.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
