# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00487-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00488-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00494-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00496-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **ZTE CORPORATION, ZTE (USA)** | § | |
| **INC. AND ZTE (TX), INC.,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.  U.S. Patent No. 7,489,929 (Case No. 6:20-cv-00488-ADA)..................................... 1

   A.     **Overview of the '929 patent** ................................................................................. 1

   B.     **ZTE's proposed importation from the specification is riddled with error**............... 2

      1.  "buffering bearer traffic" (claim 11) ............................................................ 2

   C.     **ZTE failed to disclose and hence preserve any indefiniteness theory** ....................... 5

      2.  "characteristic" (claims 14) ........................................................................ 5

      3.  "replacement hysteresis" (claim 14) ........................................................... 5

II.  U.S. Patent No. 7,742,534 (Case No. 6:20-cv-00496-ADA)................................... 7

   A.     **Overview of the '534 patent** ................................................................................. 7

   B.     **ZTE's indefinite challenges are untenable** ............................................................ 8

      1.  "maximal number of sub-carriers" (claim 4) ............................................... 8

      2.  "means for selecting said set of sub-carriers on which said user data is to  be received from said transmitter" (claim 6) ....................................................... 9

      3.  "means for determining quality levels for sub-carriers" (claim 6)................... 9

   C.     **ZTE's only offered construction is erroneous** ......................................................... 12

      4.  "quality levels" (claims 1, 2, 3, 5−9, 13, 16−18) "as a function of" (claims 1, 6, 16)........................................................................................................... 12

III.  U.S. Patent No. 8,451,839 (Case No. 6:20-cv-00487-ADA)................................. 14

   A.     **Overview of the '839 patent** ................................................................................. 14

   B.     **ZTE failed to disclose and hence preserve any indefiniteness theory** ..................... 15

      5.  "route-related information" (claims 1, 3, 6, 8) & "route" (claims 1, 6, 11)................... 15

      6.  "said predefined using time indicates[ing] a [the] using time of said  route" (claims 1, 6) ...................................................................................... 15

      7.  "using time" (claims 1, 6) .......................................................................... 17

IV.  U.S. Patent No. 9,185,036 (Case No. 6:20-cv-00494-ADA)................................. 20

   A.     **Overview of the '036 patent** ................................................................................. 20

**C.**     **Disputed terms of the '036 patent**.............................................................. 20

1.   "data flow" (claims 1, 6-10, 12, 17−21, 23−24) "to enable thereby the control of at least one data flow" (claims 1, 12,  23−24) "data flow is controlled" (claim 7−9, 18−20) "a data flow" (claims 1, 6, 17, 23)  "the data flow" (claim 7−9, 18−20)....................................................................................20

2.   "congestion condition to enable thereby the control of at least one data  flow in a manner tending to reduce the congestion condition" (claims  1, 12, 23, 24) "congestion condition" (claims 1−4, 6, 12−15, 17, 23−24) "indication that a congestion condition exists" (claims 1, 23)....................................................22

3.   "end-node associated with the congestion condition" (claims 1, 12, 23, 24) ................23

# TABLE OF AUTHORITIES

**Cases**

*AGIS Software Dev., LLC v. Huawei Device USA Inc.*,
No. 2:17-CV-513-JRG, 2018 WL 4908169 (E.D. Tex. Oct. 10, 2018) .................................... 10

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) ...................................................................................... 2

*Blue Calypso, Inc. v. Groupon, Inc.*,
93 F. Supp. 3d 575 (E.D. Tex. 2015) .......................................................................... 23

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*,
224 F.3d 1308 (Fed.Cir.2000) ..................................................................................... 13

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) ...................................................................................... 2

*Cisco Sys., Inc. v. TQ Delta, LLC*,
928 F.3d 1359 (Fed. Cir. 2019) .................................................................................... 4

*Cole v. Kimberly-Clark Corp.*,
102 F.3d 524 (Fed. Cir. 1996) ..................................................................................... 10

*Dayco Prod., Inc. v. Total Containment, Inc.*,
258 F.3d 1317 (Fed. Cir. 2001) ................................................................................. 3, 4

*Fisher-Rosemount Sys., Inc. v. Invensys Sys., Inc.*,
No. A-13-CA-587-SS, 2015 WL 1275910 (W.D. Tex. Mar. 19, 2015) .................................... 4

*Horizon Pharma, Inc. v. Dr. Reddy's Laboratories Inc.*,
-- Fed.Appx. --, 2021 WL 48428 (Fed. Cir. 2021) ....................................................... 13

*Karlin Technology, Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed. Cir. 1999) ..................................................................................... 13

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
351 F. Supp. 3d 1100 (N.D. Ill. 2018) ................................................................... passim

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ........................................................................................... passim

*Pause Technology, LLC v. TiVo, Inc.*,
419 F.3d 1326 (Fed. Cir. 2005) ................................................................................... 13

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ......................................................................... 4, 19, 23

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
   378 F.3d 1396 (Fed. Cir. 2004) ......................................................................... 2

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n,*
   511 F.3d 1132 (Fed. Cir. 2007) ......................................................................... 4

*SIPCO, LLC v. Emerson Electric Co.,*
   -- Fed. Appx. --, 2019 WL 6998644 (Fed. Cir. 2019) ...................................... 13

*Spansion, Inc. v. Int'l Trade Comm'n,*
   629 F.3d 1331 (Fed. Cir. 2010) ......................................................................... 5

*SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.,*
   336 F.3d 1298 (Fed. Cir. 2003) ................................................................... 13, 19

*USB Bridge Sols., LLC v. Buffalo Inc.,*
   1-17-CV-001158-LY, 2020 WL 1906898  (W.D. Tex. Apr. 17, 2020) .................. 23

*Warner-Lambert Co. v. Apotex Corp.,*
   316 F.3d 1348 (Fed. Cir. 2003) ....................................................................... 18

*Whirlpool Corp. v. Ozcan,*
   No. 2:15-CV-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ......... passim

*Williamson v. Citrix Online, LLC,*
   792 F.3d 1339 (Fed. Cir. 2015) ....................................................................... 10

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") submits the following opening claim construction brief pursuant to the Order Governing Proceedings ("OGP") and the Scheduling Order entered in this case.

## I.    U.S. Patent No. 7,489,929 (Case No. 6:20-cv-00488-ADA)

### A.  Overview of the '929 patent

U.S. Patent No. 7,489,929 ("the '929 patent") has an actual filing date of Mar. 31, 2005 (and hence pre-AIA statutes apply).  In certain embodiments, the '534 patent generally addresses "the need for an improved technique for completing handoffs in" Code Division Multiple Access or "CDMA" systems. '929 patent, 3:47–48.  The '929 provides the following backdrop:

> As a mobile station moves from one cell to another, communications for that mobile station should be handled by different base stations at different times. As a mobile station moves from one cell to another cell, the communications for that mobile station are transferred from the base station serving the one cell to the base station serving the other cell.

*Id.*, 1:20–25. Fig. 1 of the '929 patent, reproduced below, "schematically shows selected portions of a wireless communication network that utilizes a handoff procedure designed according to an embodiment of this invention." *Id.*, 4:31–33.



1

Among other technical problems, the '929 patent recognized that "[i]t has not previously been possible to complete a handoff for dedicated channels in CDMA systems without using soft handoff procedures with sufficient reliability. In the absence of soft handoff for a dedicated channel, the switch from one cell to another should be very quick to avoid dropping a call." *Id.*, 3:23–27. Accordingly, the '929 patent generally describes certain embodiments as addressing "the need for an improved technique for completing handoffs in CDMA systems." *Id.*, 3:47–48.

**B. ZTE's proposed importation from the specification is riddled with error**

**1. "buffering bearer traffic" (claim 11)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | During a handoff process, all data from the mobile station is buffered at the mobile station or all data at the network side is buffered at the network side until the handoff process is complete. |

The phrase "buffering bearer traffic" (recited only in dependent claim 11) requires no construction, particularly in view of its surrounding context. The claim language itself expressly qualifies the "buffering" in terms of *what* must be buffered (i.e., "buffering *bearer traffic*") and *when* (i.e., "while performing steps (A) though (F)" of claim 1).

ZTE errs in seeking to rewrite the disputed term to require that the "buffering" must occur "during a handoff process." No such "during" requirement is necessary or appropriate here at least because claim 11 already expressly qualifies the "buffering" in terms of "*while performing steps (A) though (F)*" of claim 1 (the "while" qualification). Moreover, ZTE cannot correctly defend its "during" rewrite as allegedly being nothing more than a restatement of the "while" qualification. This is because "interpretations that render some portion of the claim language superfluous are disfavored." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004); *see also Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (explaining that "claims are interpreted with an eye toward giving effect to all terms in the claim").

2

ZTE compounds its error in seeking to rewrite "bearer traffic" as "all data" instead.  On its face, ZTE's impermissible rewrite would appear to require that the claimed "buffering" must indiscriminately pertain to "*all data*," as opposed to the explicit requirement that the "buffering" need only pertain to "bearer traffic" in particular.  Even worse, ZTE's untethered construction seeks to require that "all data" must be buffered "until the handoff process is complete."  In other words, according to ZTE, the buffering must be universal as to "*all data*" and it must last *for the entire duration* of a so-called "*handoff process*" (a phrase not recited in any of the claims). Such an impermissible rewrite runs afoul of the proscription against "adding limitations to claims not required by the claim terms themselves, or unambiguously required by the specification or prosecution history."  *Dayco Prod., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327 (Fed. Cir. 2001) (citation omitted).

Far from *requiring* ZTE's untethered interpretation, the surrounding claim language *refutes* it.  Even if one were to consider steps (A) through (F) of claim 1 to each be part of what ZTE refers to as "*a handoff process*" (a phrase not recited in any of the claims), step (C) reveals that "all data" is not necessarily buffered.  This is because step (C) expressly requires "*transmitting an active set update message* to the mobile station using the existing link between the serving base station and the mobile station."  It is also significant that certain dependent claims recite *additional* processing steps (*e.g.*, claims 6, 8, 9, 10, etc.).  This reveals that steps (A) through (F) cannot properly be interpreted as necessarily reciting (collectively) an *exhaustive* set of steps for a so-called "handoff process."  Because claim 11 expressly qualifies its "buffering" in terms of "while performing steps (A) though (F)," it cannot be correctly said that the "buffering" of claim 11 must be universal as to "*all data*" or that it must last "*until the handoff process is complete*" (as ZTE seeks to require).

ZTE further errs in seeking to restrict the "buffering" of claim 11 in terms of alleged mutually exclusive locations—i.e., "all data from the mobile station *is buffered at the mobile station* or all data at the network side *is buffered at the network side*."  Such an impermissible rewrite further runs afoul of the proscription against "adding limitations to claims not required by

3

the claim terms themselves, or unambiguously required by the specification or prosecution history." *Dayco*, 258 F.3d at 1327.

It is expected ZTE will attempt to justify its rewrite of the claim language by pointing to a *non-limiting* description of a "disclosed example" in the specification. Specifically, the specification describes a particular "disclosed example," in part, as follows:

> Another feature of the disclosed example is that all user data for a mobile station involved in the example handoff process is buffered during the handoff process. In other words, all data from the mobile station is buffered at the mobile station and all data at the network side is buffered at the network side until the handoff process is complete.

'929 patent, 6:34−30. Here, the specification does not provide unambiguous lexicography or disclaimer that would justify rewriting the term "buffering *bearer traffic*" (recited in claim 11) in the manner ZTE proposes.[1] Indeed, the claim term "*bearer traffic*" is not even expressly invoked in this passage. Under the circumstances, it would be a "cardinal sin" to import the above description of a "disclosed example" as a claim limitation. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (*en banc*) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") (citation omitted). This would be true even if the above passage were the only disclosed embodiment involving a form of buffering (it is not). *Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1364 (Fed. Cir. 2019) ("it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.") (citation omitted).

---

[1] *See Fisher-Rosemount Sys., Inc. v. Invensys Sys., Inc.*, No. A-13-CA-587-SS, 2015 WL 1275910, at *11 (W.D. Tex. Mar. 19, 2015) ("Lexicography only arises when the patent drafter 'clearly, deliberately, and precisely define[s] the term.' Clear definitions are usually set off by quotation marks or are marked by the word 'is.'") (quoting *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007)).

### C.  ZTE failed to disclose and hence preserve any indefiniteness theory

### 2.  "characteristic" (claims 14)

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b).[2] |

### 3.  "replacement hysteresis" (claim 14)

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b).[3] |

The disputed "characteristic" and "replacement hysteresis" terms, recited only in dependent claim 14, are both presumptively definite.  Each term, when read in light of the intrinsic evidence, presumptively informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910−11 (2014).  Dependent claim 14 is reproduced below.

> 4. The method of claim 1, comprising
> determining a ***characteristic*** of the existing link;
> determining the ***characteristic*** of the new link;
> determining a difference between the determined characteristics; and
> performing step (A) if the determined difference exceeds a threshold that
> is selected to minimize ***replacement hysteresis***.

'929 patent, claim 14 (8:42−49) (emphasis added).

For both disputed terms, the burden rests with ZTE to overcome the presumption of definiteness by clear and convincing evidence.  It is unclear how ZTE maintains it can possibly meet its burden here, given ZTE has waived any reliance on expert testimony to support its position.  *See, e.g., Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018) (finding a "garden-variety theory of indefiniteness 'requires a determination whether those skilled in the art would understand what is claimed'"); *Spansion, Inc. v. Int'l Trade Comm'n*,

---

[2] It is unclear why ZTE newly cites the AIA statute in articulating its indefiniteness position.  As ZTE previously acknowledged in its Invalidity Contentions (quoted above), pre-AIA 34 U.S.C. § 112, ¶ 2 governs here, due to the effective filing date of the '929 patent.

[3] *See* note 2, *supra*.

629 F.3d 1331, 1344 (Fed. Cir. 2010) (citation omitted) ("the Court [should] conclude[] that expert testimony is necessary here to meet the exacting burden of proof."); *Whirlpool Corp. v. Ozcan*, No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) (rejecting indefiniteness contention and noting that the accused infringer only provided attorney arguments to support its position, and no expert testimony).

ZTE also failed to provide *any* notice as to any indefiniteness theory for either of the two terms of the '929 patent ZTE purports to challenge—namely, the "characteristic" and "replacement hysteresis" terms. ZTE's Invalidity Contentions merely provide a bulleted list of claim language which includes the above terms (among others). Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, at 53. ZTE introduced its bulleted list with the following conclusory and ambiguous statement: "[b]ased on ZTE's present understanding of (and Plaintiff's apparent interpretation of) the Asserted Claims, the Asserted Claims of the '929 Patent below fail to satisfy the requirements of § 112, ¶ 2 because the claims fail to point out and distinctly claim the subject matter which the inventors regard as the alleged invention for the following terms[.]" That single, conclusory statement is *literally all* that ZTE opted to disclose in connection with its present challenge of the "characteristic" and "replacement hysteresis" terms.

In the absence of *any* notice of the alleged basis for ZTE's indefiniteness position, WSOU is prejudiced in its ability to address the dispute over these terms in its opening brief. ZTE should not be allowed to lie behind the log on this dispute (injected by ZTE alone) and then force WSOU to relegate its entire rebuttal argument to its reply only. Because ZTE failed to provide *any* notice if its positions on indefiniteness, and in the absence of any expert testimony, the presumption stands unrebutted that the "characteristic" term, when read in light of the intrinsic evidence, informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910−11.

Without speculating as to why ZTE contends the disputed terms are allegedly indefinite, WSOU submits that at least the following description of an example embodiment is relevant to the disputed terms:

> Typical soft handoff procedures may include adding a new leg to the active set, removing an existing leg from the active set or, if the active set is full, replacing an existing member of the active set with a new member. For each of these events during a handoff procedure, there is a hysteresis for a handoff decision. Typical hysteresis thresholds are on the order of 1 dB. If a member of the active set has a pilot signal strength, for example, that is 1 dB less than a candidate base station, the latter may become a member of the active set to replace an existing member when that threshold difference, which is specified by the selected replacement hysteresis, occurs.

'929 patent, 2:59−3:2.[4]

## II.      U.S. Patent No. 7,742,534 (Case No. 6:20-cv-00496-ADA)

### A.  Overview of the '534 patent

U.S. Patent No. 7,742,534 ("the '534 patent") has an actual filing date of Jul. 11, 2006 and claims priority to a foreign application filed August 1, 2005 (and hence pre-AIA statutes apply). The '534 patent generally "relates to a method for optimizing the use of the feedback forward cannel in multi-carrier systems." '534 patent, 1:10–13.  The '534 patent recognized that "[a] very important task of multi carrier systems [is] to provide for an efficient subcarrier/modulation allocation to the different users." *Id.*, 1:43–46. However, in certain mobile environments involving multipath radio carriers, sub-carriers may be subject to very strong carrier attenuation.  In certain instances, such sub-carriers would be uselessly allocated to a user device experiencing fading when, instead, they could have been received with good quality by other users. *Id.*, 1:46–53.  Other attempts to address this issue involved use of signaling information that "consumes a not negligible bandwidth and time so that the effective payload data rate is reduced accordingly."  *Id.*, 1:60–63.

In view of these example technical problems, among others, the '534 patent states that "[a] particular object of the present invention is to provide a method for sending information on the sub-carriers to be used between a transmitter and a receiver in a more efficient way so that the amount of signaling information in the feed forward carrier is reduced but anyway sufficient for

---

[4] Cited passage is offered as an example and not meant to be exhaustive of all relevant disclosure.

performing an efficient resource allocation in the multi carrier system. [¶] Another object of the invention is to provide a corresponding receiver." *Id.*, 2:1–8.

**B. ZTE's indefinite challenges are untenable**

**1. "maximal number of sub-carriers" (claim 4)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b). |

The burden rests with ZTE to overcome the presumption of definiteness, by clear and convincing evidence, for the phrase "maximum number of sub-carriers" (recited in claim 4 only).[5] It is unclear how ZTE maintains it can possibly meet its burden here, given ZTE has waived any reliance on expert testimony to support its position. *See, e.g.*, *Lecat's Ventriloscope*, 351 F. Supp. 3d at 1114 (N.D. Ill. 2018); *Whirlpool Corp.*, 2016 WL 7474517, slip. op. at *3.

ZTE also failed to provide *any* notice as to its alleged indefiniteness theory for this term. ZTE's Invalidity Contentions merely provide a bulleted list of claim language which includes the above terms (among others). Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, at 52. ZTE introduced its bulleted list with the following conclusory and ambiguous statement: "[b]ased on ZTE's present understanding of (and Plaintiff's apparent interpretation of) the Asserted Claims, the Asserted Claims of the '534 Patent below fail to satisfy the requirements of § 112, ¶ 2 because the claims fail to point out and distinctly claim the subject matter which the inventors regard as the alleged invention for the following terms[.]" That single, conclusory statement is *literally all* that ZTE opted to disclose in connection with its present challenge of the phrase "maximal number of sub-carriers" (as recited in claim 4).

In the absence of *any* notice of the alleged basis for ZTE's indefiniteness position, WSOU is prejudiced in its ability to address the dispute over these terms in its opening brief. ZTE should

---

[5] ZTE also purports to challenge the definiteness of the term "a maximum number of sub-carriers," as recited in claim 7. It is unclear why ZTE feels justified in its position that these two distinct phrases, recited in differing contexts, can somehow be counted as one term against the Court's order (dated Feb. 26, 2021) expressly limiting ZTE to a certain number of terms per group of cases.

not be allowed to lie behind the log on this dispute (injected by ZTE alone) and then force WSOU to relegate its entire rebuttal argument to its reply only.  Because ZTE failed to provide *any* notice if its positions on indefiniteness, and in the absence of any expert testimony, the presumption stands unrebutted that the disputed phrase, when read in light of the intrinsic evidence, informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910−11.

Without speculating as to why ZTE contends the disputed phrase is allegedly indefinite, and while the claim language in question speaks for itself, WSOU submits that a person of ordinary skill would understand the claim language with reasonable certainty in further view of certain relevant descriptions of example embodiments.  *See*, *e.g.*, '543 patent, 3:26−32; 4:5−14; 5:48−52; etc.[6]

### 2.  "means for selecting said set of sub-carriers on which said user data is to be received from said transmitter" (claim 6)

| WSOU's Position | ZTE's Position |
|---|---|
| Not subject to 35 U.S.C. § 112, ¶6. | Governed by 35 U.S.C. § 112(f). |
| **If construed as means-plus-function under § 112, ¶6, however, then** | |
| **Function:** "selecting said set of sub-carriers on which said user data is to be received from said transmitter" and | **Function:** selecting a set of sub-carriers from the plurality of sub-carriers on which user data is to be communicated from a transmitter to a receiver" |
| **Structure:** receiver. | **Structure:** none and hence indefinite under 35 U.S.C. § 112(b).[7] |

### 3.  "means for determining quality levels for sub-carriers" (claim 6)

| WSOU's Position | ZTE's Position |
|---|---|
| Not subject to 35 U.S.C. § 112, ¶6. | Governed by 35 U.S.C. § 112(f). |
| **If construed as means-plus-function under § 112, ¶6, however, then** | **Function:** "determining quality levels for sub-carriers" |

---

[6] These example citations are not meant to be exhaustive of all relevant disclosure.

[7] It is unclear why ZTE newly cites the AIA statute in articulating its indefiniteness position.  As ZTE previously acknowledged in its Invalidity Contentions (quoted above), pre-AIA 34 U.S.C. § 112, ¶ 2 governs here, due to the effective filing date of the '534 patent.

| **Function:** "determining quality levels for sub-carriers" | **Structure:** none disclosed, and hence indefinite under 35 U.S.C. § 112(b).[8] |
|---|---|
| **Structure**: receiver. | |

It is both curious and improper that ZTE presents its dispute over the *distinct* "means for selecting . . ." and "means for determining . . ." terms as somehow constituting a *single* dispute. ZTE improperly counted these two distinct terms as one in order to underreport the total number of disputed terms, in view of the Court's email (dated February 26, 2021) ordering ZTE to comply with the Court's term limits.  A portion of the Court's email Order is reproduced below:

2. ZTE is hereby ORDERED to comply with the following term limits:

| Group | Terms |
|---|---|
| 1 | 12 |
| 2 | 12 |
| 3 | 12 |

Court Order dated February 26, 2021, issued through e-mail from Robert Earle, Law Clerk to the Hon. Alan D. Albright , United States District Court – Western District of Texas.

Use of the words "means for" in both disputed terms gives rise to a *rebuttable* presumption that these terms are each subject to pre-AIA 35 U.S.C. § 112, ¶6.  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*).  This presumption is rebutted where a claim limitation recites, from the perspective of one of skill in the art, sufficiently definite structure that performs the claimed function. The Federal Circuit has articulated the § 112, ¶ 6 test in a negative as follows: "[t]o invoke [35 U.S.C.A. § 112, ¶ 6] the alleged means-plus-function claim element must *not* recite definite structure which performs the described function."  *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) (emphasis added); *see also AGIS Software Dev., LLC v. Huawei Device USA Inc.*, No. 2:17-CV-513-JRG, 2018 WL 4908169, at *18 (E.D. Tex. Oct.

---

[8] *See* note 7, *supra*.

10, 2018) (collecting cases, including *Cole v. Kimberly-Clark Corp*).   Under the controlling Federal Circuit precedent, the presumption is rebutted here.

Claim 6 recites both disputed terms in the context of "said *receiver* comprising: . . . ." '534 patent, 6:38−39.   Thus, the claim language expressly identifies "said receiver" as the definite structure for performing both "means for" limitations.

This explicit identification of the "receiver" as the corresponding structure for both the "selecting" and "determining" limitations is consistent with the remainder of the specification of the '534 patent.   That the receiver is the corresponding structure is explicitly confirmed in the following disclosure: "[t]hese objects, and others that appear below, are achieved by a method for transmitting user data in a multi-carrier radio communication system according to claim 1, *and a receiver according to claim 6*." '534 patent, 2:12−15.   In addition, Figure 4 (reproduced below) and its accompanying description disclose the receiver as the corresponding structure.



*Id.*, Fig. 4 (yellow highlighting added); *see also id.*, 3:9−13 ("Thanks, to additional and concordant information present at the transmitter 12 and at the receiver 11, the receiver 11 is able to deduce from the indication related to a threshold the set of sub carriers on which the transmission will be performed by base station 1."); 5:38−42 ("The receiver comprises means 41 for selecting a set of

sub-carriers to receive user data from a transmitter, . . . [and] means 43 for determining a quality level for each sub carriers or for groups of sub carriers.").  The specification also illustrates mobile terminal 11 schematically as having a receiver, as shown by the highlighted portion of Fig. 1 reproduced below:



*Id.*, Fig. 1 (highlighting added); *see also id.*, 3:60−67 ("Step 22 consists in determining at the mobile terminal a quality level for the sub carriers of the multi carrier system.").  That the claimed "receiver" itself connotes definite structure is also confirmed, for example, by the following disclosure: "[i]n a preferred embodiment of the present invention, the receiver is a terminal of an OFDMA system for example but not restricted to HSDPA or WIMAX." *Id.*, 5:53−55.

 For the foregoing reasons, the claim language itself contains sufficiently definite structure for the disputed "means for" terms by reciting both are included within and are part of the claimed "receiver."  If the Court finds the presumption is not rebutted, however, then the respective function should be construed as set forth in the tables above and the corresponding structure should be the "receiver" disclosed in the specification of the '534 patent (and equivalents thereof).  ZTE's untenable position that neither the claim language nor the specification discloses *any* corresponding structure for either disputed "means for" term is plainly incorrect.

 **C.  ZTE's only offered construction is erroneous**

  **4.  "quality levels" (claims 1, 2, 3, 5−9, 13, 16−18)**
   **"as a function of" (claims 1, 6, 16)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | One of a signal-to-interference ratio, a bit error rate, or a modulation scheme. |

The terms "quality levels" and "as a function of" require no construction here, particularly in view of their surrounding context and the remainder of the intrinsic evidence.  It is unclear why ZTE groups together these two distinct terms as single term, and then offers the *same* claim construction for both terms.  The claim language itself expressly differentiates these terms by separately reciting both *in the same claim*.  *See*, *e.g.*, '534 patent, claim 1 at 5:63 and 6:7.  These expressly-differentiated terms presumptively do not have the same meaning.  *See*, *e.g.*, *Pause Technology, LLC v. TiVo, Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005) (holding every distinct term in a patent should be given meaningful effect, where possible); *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed.Cir.2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings."); *SIPCO, LLC v. Emerson Electric Co.*, -- Fed. Appx. --, 2019 WL 6998644, *3 (Fed. Cir. 2019) (nonprecedential) (finding error in a construction that gave the same meaning to two distinct terms recited in the same claim, the Federal Circuit instructing that "because the patentee chose to use different terms to define the 'receiver address' and the 'scalable address,' we presume that those two terms have different meanings") (citing *Chicago Bd. Options Exch., Inc. v. Int'l Securities Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012)); *Horizon Pharma, Inc. v. Dr. Reddy's Laboratories Inc.*, -- Fed.Appx. --, 2021 WL 48428, *3 (Fed. Cir. 2021) (nonprecedential) (finding that separate use of both terms "target" and "produce" suggested separate meanings).

ZTE's proposed construction is also presumptively incorrect as it would violate the doctrine of claim differentiation. The Federal Circuit has instructed that the doctrine of claim differentiation "create[s] a presumption that each claim in a patent has a different scope" and "[t]hat presumption *is especially strong* when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim." *SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed. Cir. 2003) (emphasis added); *see also Karlin Technology, Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed. Cir. 1999) ("The doctrine [of claim differentiation] . . . normally means that limitations stated in dependent claims are not to

be read into the independent claim form which they depend."). The presumption arising here is "especially strong" because ZTE seeks to import virtually the entirety of claim 8, verbatim, into claim 6 (from which claim 8 depends). Specifically, claim 8 further limits independent claim 6 by reciting, "[t]he apparatus set forth in claim 6 *wherein each sub-carrier quality level identifies at least one of a signal-to-interference ratio, a bit error rate, and a modulation scheme* for a corresponding sub-carrier or a corresponding sub-carrier group." Under the circumstances, the doctrine gives rise to an *especially strong* presumption against importing these *additional limitations* recited in dependent claim 8 into independent claim 6. But that is precisely what ZTE seeks to do.

## III.     U.S. Patent No. 8,451,839 (Case No. 6:20-cv-00487-ADA)

### A.     Overview of the '839 patent

U.S. Patent No. 8,451,839 ("the '839 patent") has an actual filing date of August 14, 2007 and claims priority to a foreign application filed September 7, 2006 (and hence pre-AIA statutes apply). The Abstract summarizes an example embodiment as follows:

> The present invention provides a method for creating routes in ==**access devices**== of the communication network by using access response messages. With the method provided by the present invention, services can be distinguished and forwarded based on destination IP sub-networks, so that different services can be distributed in access devices. In this way, on the premise that services are distinguished based on layer 3, the requirements for access devices are reduced and layer 2 networks on the user side are not required to carry out route protocols, which decreases administrators' maintenance work and is the important condition for the realization of plug&play and reduces the requirements for marginal routers.

'839 patent, Abstract (highlighting and emphasis added). Figure 3b of the '839 patent is reproduced below, with consistent highlighting added to emphasize the ==**access device**==, according to the illustrated embodiment.

14



Fig. 3b

**B.  ZTE failed to disclose and hence preserve any indefiniteness theory**

**5.  "route-related information" (claims 1, 3, 6, 8) & "route" (claims 1, 6, 11)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b). |

**6.  "said predefined using time indicates[ing] a [the] using time of said route" (claims 1, 6)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b). |

The burden rests with ZTE to overcome the presumption of definiteness, by clear and convincing evidence, for the three disputed terms / phrases (1) "route-related information" (claims 1, 3, 6, and 8), (2) "route" (claims 1, 6, and 11), and (3) "said predefined using time indicates[ing] a [the] using time of said route" (claims 1 and 6).  It is unclear how ZTE maintains it can possibly meet its burden here, given ZTE has waived any reliance on expert testimony to support its position.  *See*, *e.g.*, *Lecat's Ventriloscope*, 351 F. Supp. 3d at 1114 (N.D. Ill. 2018); *Whirlpool Corp.*, 2016 WL 7474517, at slip. op. *3.

15

ZTE also failed to provide *any* notice as to its alleged indefiniteness theory for any of these three terms / phrases.  ZTE's Invalidity Contentions merely provide a bulleted list of terms and phrase which include those listed above.  Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, at 52.  ZTE introduced its bulleted list with the following conclusory and ambiguous statement: "[b]ased on ZTE's present understanding of (and Plaintiff's apparent interpretation of) the Asserted Claims, the Asserted Claims of the '839 Patent below fail to satisfy the requirements of § 112, ¶ 2 because the claims fail to point out and distinctly claim the subject matter which the inventors regard as the alleged invention for the following terms[.]"  That single, conclusory statement is *literally all* that ZTE opted to disclose in connection with its present indefiniteness objections to "route-related information" (claims 1, 3, 6, and 8), "route" (claims 1, 6, and 11), and "said predefined using time indicates[ing] a [the] using time of said route" (claims 1 and 6).

In the absence of *any* notice of the alleged basis for ZTE's indefiniteness position, WSOU is prejudiced in its ability to address the dispute over these terms in its opening brief.  ZTE should not be allowed to lie behind the log on this dispute (injected by ZTE alone) and then force WSOU to relegate its entire argument on this issue to its reply only.  Because ZTE failed to provide *any* notice of its positions on indefiniteness, and in the absence of any expert testimony, the presumption stands unrebutted that the disputed phrase, when read in light of the intrinsic evidence, informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910−11.

Without speculating as to why ZTE contends any of the above disputed terms / phrases are allegedly indefinite, and while the claim language in question speaks for itself, WSOU submits that a person of ordinary skill would understand the claim language with reasonable certainty in further view of certain relevant descriptions of example embodiments. *See*, *e.g.*, '839 patent, Fig. 2 and corresponding description at 5:3−41; Fig 4 and corresponding description at 6:15−7:24; etc.[9]

---

[9] These example citations are not meant to be exhaustive of all relevant disclosure.

### 7. "using time" (claims 1, 6)[10]

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Claim 6: Indefinite for lack of antecedent basis under 35 U.S.C. § 112(b). Additionally, meaning "lease time" |

The burden rests with ZTE to overcome the presumption of definiteness, by clear and convincing evidence, for the disputed term "using time." It is unclear why ZTE maintains it has preserved the right to raise an indefiniteness challenge against each instance of "using time" in general. ZTE's Invalidity Contentions, instead, list the term with its "predefined" qualifier—i.e., "predetermined using time." Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, p. 57. On March 2, 2021, long after ZTE served its Invalidity Contentions, it served its "Second Narrowed Claim Terms and Constructions" in which ZTE newly alleged "using time" (without the predetermined qualifier) is allegedly "[i]ndefinite for lack of antecedent basis under 35 U.S.C. § 112(b)." Even if ZTE had preserved such a challenge by providing sufficient notice in its Invalidity Contentions, and it did not, the new challenge is meritless.

For ease of reference, claim 1 of the '839 patent is reproduced below, with "***using time***" emphasized (regardless of whether or not it is immediately preceded by the "predefined" qualifier):

> 1. A method, in an access device of the communication network, for managing route information, comprising:
>
> receiving an access response message from a server;
>
> obtaining route-related information and a predefined ***using time*** from said access response message, said predefined ***using time*** indicates a ***using time*** of said route; and
>
> updating a route table item in a route table based on said route-related information and said predefined ***using time***.

'839 patent, 8:59−67 (claim 1) (emphasis and highlighting added). ZTE has failed to provide notice as to which particular instance of "using time" recited in claim 1 allegedly lacks antecedent

---

[10] It is unclear why ZTE's "Second Narrowed Claim Terms and Constructions" (dated March 2, 2021) also identified claim 11 in purporting to seek construction of "using time." That term is not recited in claim 11 of the '839 patent.

basis.  When recited as "said predefined using time," use of the words "said predefined" is an explicit reference to those antecedent instances also qualifying the term as "*predefined* using time." The presumption of definiteness stands for claim 1.

ZTE also alleges, without explanation, that "using time" lacks antecedent basis in independent claim 6.  For ease of reference, claim 6 of the '839 patent is reproduced below, again with "***using time***" emphasized:

> 6. A route management apparatus, in an access device of the communication
> network, for managing route information, comprising:
>
> a receiver configured to receive an access response message from a server;
>
> a first obtainer configured to obtain route-related information and a
> predefined ***using time*** from said access response message, said
> predefined ***using time*** indicating the ***using time*** of said route; and
>
> a route maintainer configured to update a route table based on said route-
> related information and said predefined ***using time***.

'839 patent, 8:59−67 (claim 6) (emphasis and highlighting added).  As with claim 1, use of the words "said predefined" in claim 6 is an explicit reference to those antecedent instances likewise qualifying the term as "*predefined* using time."

That claim 6 uses the definite article "the" in the phrase "the using time of said route" does not render "using time of said route" indefinite for alleged lack of antecedent reference.  Because claim 6 consistently uses the word "said" when making antecedent reference, the definite article "the" in this context is not an antecedent reference.  Rather, use of the definite article "the" in the phrase "the using time of said route" simply underscores that "said predefined using time" must refer to "the using time of said route," and not just any route.  *See Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356, (Fed. Cir. 2003) (analyzing term "the" in the phrase of a statute "the use" as requiring a specific use and not just any use).  This plain reading is consistent with the remainder of the intrinsic evidence.  The specification discloses, for example, that "[i]f said access response message further comprises the predefined using time *indicating the time which can be used by said route*[.]"  *Id.*, 5:13−15.  Here, consistent with the language of claim 6, the specification

18

uses the definite article "the" in referring to "*the* time which can be used by said route."   *Id*.   The presumption of definiteness stands for claim 6 as well.

ZTE compounds its error in seeking to restrict "using time" to a single embodiment thereof—namely, "lease time."   As explained above, the doctrine of claim differentiation gives rise to an "especially strong" presumption against importing limitations from a dependent claim into the independent claim from which it depends.   *SunRace Roots*, 336 F.3d at 1302–03; *Karlin*, 177 F.3d at 971–72.   Claim 5, which depends from claim 1, recites "[t]he method according to claim 1, wherein said access response message refers to a dynamic host configuration protocol response message, ***said predefined using time refers to the lease time*** in said dynamic host configuration protocol response message." '839 patent, 9:22−26 (claim 5).   Because claim 5 narrows "said predefined using time" as necessarily "refer[ring] to the lease time," it would be inappropriate to construe all instances of "using time" as necessarily referring to "lease time."

It is expected ZTE will point the following statement in the specification, which describes certain aspects of an example embodiment as follows: "[i]n current network realizations, aforesaid access request message and access response message are DHCP messages, and said predefined using time is the lease time in the DHCP message." '839 patent, 6:11−14.   That this statement is merely exemplary, and not intended as a universal limitation necessarily applicable to all embodiments, is confirmed by the repetition of this same statement elsewhere in the specification, *in connection with a different embodiment*.   *Id.*, 7:21−24.   There would be no need to repeat the statement if either instance were offered as universal qualifier as to all embodiments.   Moreover, as explained above, dependent claim 5 recites this statement from the specification nearly verbatim, thereby confirming it would be a "cardinal sin" to import any aspect of this statement as a claim limitation into independent claim 1 (or any other claim for that matter).   *Phillips*, 415 F.3d at 1320 ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.") (citation omitted).

19

**IV.    U.S. Patent No. 9,185,036 (Case No. 6:20-cv-00494-ADA)**

### A.  Overview of the '036 patent

U.S. Patent No. 9,185,036 ("the '036 patent") has an actual filing date of March 23, 2005 (and hence pre-AIA statutes apply).  The '306 patent generally "relates to computer networks such as LANs (local area networks), and more particularly to an intelligent method for reducing network congestion via using messages propagated upstream from congestion related nodes."  '036 patent, 1:6−10.  Among other technical advantages, the '306 patent addresses inefficiencies in computer networking which may arise, for example, in addressing a congestion condition at a network node.  *Id.*, 1:25−50.  For example, certain techniques were incapable of making a distinction, among different data flows between various nodes, as to which flow is the cause of the congestion condition.  *Id.*  As another example, certain techniques inefficiently throttled traffic even when such traffic did not pass through the node presently having the congestion condition.  *Id.*  The '306 patent explains that such example inefficiencies may be aggravated in certain circumstances, such as "when Ethernet bridges are used to connect nodes (via pathways)."  *Id.*  To address these and other technical issues, the '036 patent includes certain embodiments which teach, for example, methods and systems for "distinguish[ing] problematic congestion causing flows from the non-congestion causing flows, thus leading to intelligent differentiation in flow control."  *Id.*, 1:64−67.

### C.  Disputed terms of the '036 patent

1. **"data flow" (claims 1, 6-10, 12, 17−21, 23−24)**
   **"to enable thereby the control of at least one data flow" (claims 1, 12, 23−24)**
   **"data flow is controlled" (claim 7−9, 18−20)**
   **"a data flow" (claims 1, 6, 17, 23)**
   **"the data flow" (claim 7−9, 18−20)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b). |

The burden rests with ZTE to overcome the presumption of definiteness, by clear and convincing evidence, for each one of the five disputed terms / phrases listed above.  Even if ZTE had preserved each one of these five distinct indefiniteness challenges it now purports to raise, and

20

it did not, it is unclear how ZTE maintains it can possibly meet its burden here, given ZTE has waived any reliance on expert testimony to support its position.  *See, e.g., Lecat's Ventriloscope*, 351 F. Supp. 3d at 1114 (N.D. Ill. 2018); *Whirlpool Corp.*, 2016 WL 7474517, at slip. op. *3.

It is both curious and improper that ZTE presents *five distinct* indefiniteness challenges as somehow constituting a *single* dispute.  ZTE improperly counted these five distinct terms / phrases as one in order to underreport the total number of disputed terms, in view of the Court's email (dated February 26, 2021) ordering ZTE to comply with the Court's limit of twelve (12) terms total for this group of four cases.  In addition, ZTE failed to provide *any* notice as to its alleged indefiniteness theory for any of these terms / phrases.  ZTE's Invalidity Contentions merely provide a bulleted list of terms and phrase which include some—*but not all*—of those listed above. Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, at 54.  ZTE introduced its bulleted list with the following conclusory and ambiguous statement: "[b]ased on ZTE's present understanding of (and Plaintiff's apparent interpretation of) the Asserted Claims, the Asserted Claims of the '036 Patent below fail to satisfy the requirements of § 112, ¶ 2 because the claims fail to point out and distinctly claim the subject matter which the inventors regard as the alleged invention for the following terms[.]"  That single, conclusory statement is *literally all* that ZTE opted to disclose in connection with its present indefiniteness objections.

In the absence of *any* notice of the alleged basis for ZTE's indefiniteness positions for any of these five distinct terms, WSOU is prejudiced in its ability to address the dispute over these terms in its opening brief.  ZTE should not be allowed to lie behind the log on this dispute (injected by ZTE alone) and then force WSOU to relegate its entire rebuttal argument to its reply only. Because ZTE failed to provide *any* notice if its positions on indefiniteness, and in the absence of any expert testimony, the presumption stands unrebutted that the disputed phrase, when read in light of the intrinsic evidence, informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty."  *Nautilus,* 572 U.S. at 910−11.

2. **"congestion condition to enable thereby the control of at least one data flow in a manner tending to reduce the congestion condition" (claims 1, 12, 23, 24)**
   **"congestion condition" (claims 1−4, 6, 12−15, 17, 23−24)**
   **"indication that a congestion condition exists" (claims 1, 23)**

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Indefinite under 35 U.S.C. § 112(b). |

The burden rests with ZTE to overcome the presumption of definiteness, by clear and convincing evidence, for each one of the three disputed terms / phrases listed above. Even if ZTE had preserved each one of these three distinct indefiniteness challenges it now purports to raise, and it did not, it is unclear how ZTE maintains it can possibly meet its burden here, given ZTE has waived any reliance on expert testimony to support its position. *See*, *e.g.*, *Lecat's Ventriloscope*, 351 F. Supp. 3d at 1114 (N.D. Ill. 2018); *Whirlpool Corp.*, 2016 WL 7474517, at slip. op. *3.

It is both curious and improper that ZTE presents *three distinct* indefiniteness challenges as somehow constituting a *single* dispute. ZTE improperly counted these three distinct terms / phrases as one in order to underreport the total number of disputed terms, in view of the Court's email (dated February 26, 2021) ordering ZTE to comply with the Court's limit of twelve (12) terms total for this group of four cases. In addition, ZTE failed to provide *any* notice as to its alleged indefiniteness theory for any of these terms / phrases. ZTE's Invalidity Contentions merely provide a bulleted list of terms and phrase which include some—*but not all*—of those listed above. Ex. A, ZTE's Invalidity Contentions dated Jan. 6, 2021, at 54. ZTE introduced its bulleted list with the following conclusory and ambiguous statement: "[b]ased on ZTE's present understanding of (and Plaintiff's apparent interpretation of) the Asserted Claims, the Asserted Claims of the '036 Patent below fail to satisfy the requirements of § 112, ¶ 2 because the claims fail to point out and distinctly claim the subject matter which the inventors regard as the alleged invention for the following terms[.]" That single, conclusory statement is *literally all* that ZTE opted to disclose in connection with its present indefiniteness objections.

In the absence of *any* notice of the alleged basis for ZTE's indefiniteness position, WSOU is prejudiced in its ability to address the dispute over these terms in its opening brief. ZTE should

not be allowed to lie behind the log on this dispute (injected by ZTE alone) and then force WSOU to relegate its entire rebuttal argument to its reply only.  Because ZTE failed to provide *any* notice if its positions on indefiniteness, and in the absence of any expert testimony, the presumption stands unrebutted that the disputed phrase, when read in light of the intrinsic evidence, informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus,* 572 U.S. at 910−11.

### 3.   "end-node associated with the congestion condition" (claims 1, 12, 23, 24)

| WSOU's Position | ZTE's Position |
|---|---|
| Plain and ordinary meaning. | Written description/enablement under 35 U.S.C. § 112(a). |

ZTE errs as a matter of law in asserting written description and enablement as issues properly raised during claim construction.  They are not.  As this Court instructed, "patent validity arguments like lack of enablement and lack of written description are not proper during claim construction proceedings."  *USB Bridge Sols., LLC v. Buffalo Inc.*, 1-17-CV-001158-LY, 2020 WL 1906898, at *5 (W.D. Tex. Apr. 17, 2020) (citing *Evicam Int'l, Inc. v. Enf't Video, LLC*, 2016 WL 6470967, at *14 (E.D. Tex. Nov. 2, 2016) and *Phillips*, 415 F.3d at 1327 ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction.")).  As this Court recognized, the Eastern District of Texas has provided similar instruction.  *See*, *e.g.*, *id.*; *Blue Calypso, Inc. v. Groupon, Inc.*, 93 F. Supp. 3d 575, 598 (E.D. Tex. 2015) ("Because claim construction proceedings generally do not address written description challenges, Defendants' 'indefiniteness' argument is hereby expressly rejected.") (citing *Phillips*, 415 F.3d at 1327).

Even if it were proper here to address these written description and enablement disputes during claim construction, and it is not, WSOU is prejudiced in its ability to address these unripe disputes in its instant opening brief because (1) ZTE has failed to provide *any* notice as to why the above phrase allegedly fails to satisfy either the written description or enablement requirements and (2) ZTE—*the party with the burden*—has not offered what it contends would be the proper construction that allegedly would give rise to issues of written description or enablement.  ZTE

23

should not be allowed to lie behind the log on these alleged yet unripe disputes and then force WSOU to relegate its entire rebuttal argument to its *claim construction* reply brief only.

Dated: March 12, 2021

Respectfully submitted,

By:   */s/ Ryan S. Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeff Huang
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jeff@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] - Document Filing System, to all counsel of record, on March 12, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless
