**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | § § § § | **C.A. NO. 6:20-cv-00487-ADA** **C.A. NO. 6:20-cv-00488-ADA** **C.A. NO. 6:20-cv-00489-ADA** |
| *Plaintiff,* | § § | **C.A. NO. 6:20-cv-00490-ADA** **C.A. NO. 6:20-cv-00491-ADA** |
| **v.** | § § | **C.A. NO. 6:20-cv-00493-ADA** **C.A. NO. 6:20-cv-00494-ADA** |
| **ZTE CORPORATION,** | § § | **C.A. NO. 6:20-cv-00495-ADA** **C.A. NO. 6:20-cv-00496-ADA** |
| *Defendant.* | § § | **C.A. NO. 6:20-cv-00497-ADA** |
| | § § | **JURY TRIAL DEMANDED** |
| | § § § | ▬▬▬▬▬▬ |

## ZTE CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS FINAL INFRINGEMENT CONTENTIONS

**PUBLIC VERSION**

<span style="background:black">              </span>

# TABLE OF CONTENTS

I.     INTRODUCTION: WSOU SEEKS EXTRAORDINARY RELIEF OF EXPANDING THE NUMBER OF NAMED DEVICES NEARLY TEN-FOLD ............. 1

II.    BACKGROUND ................................................................................................. 1

    A.    WSOU Missed the Deadline to Serve Its Final Infringement Contentions ............ 1

    B.    WSOU Now Seeks to Add Almost 400 New Devices in Yet Another Set of Untimely Infringement Contentions ................................................. 2

    C.    WSOU Now Burdens the Court with Duplicative Briefing After Making Inaccurate Certifications to The Court ...................................................... 3

III.   ARGUMENT: THE COURT SHOULD DENY WSOU'S MOTION FOR LEAVE ................................................................................................................ 4

    A.    Legal Standard ................................................................................................. 4

    B.    WSOU Fails to Satisfy the Standard For "Good Cause" ....................................... 5

        1.    Factor 1: WSOU Has No Reasonable Explanation for Its Failure to Meet the July 16, 2021, Deadline ................................................. 5

        2.    Factor 2: If WSOU Truly Believes These Amendments are Important, WSOU Should Have Included Them in Earlier Infringement Contentions ............................................................... 7

        3.    Factor 3: Granting WSOU's Motion for Leave to Amend Would Effectively Reset the Case and Prejudice ZTE ........................................... 9

        4.    Factor 4: The Only Cure to the Prejudice is an Extension of Fact Discovery and Reconsideration of a Stay Pending the Resolution of Post-Grant Proceedings ........................................................ 10

IV.   CONCLUSION .................................................................................................. 10

i

**PUBLIC VERSION**

███████████████

## TABLE OF AUTHORITIES

*Alexsam Inc. v. IDT Corp.*,
   2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011) ................................................................... 7

*Allvoice Developments US, LLC v. Microsoft Corp.*,
   612 Fed. Appx. 1009 (Fed. Cir. 2015) ...................................................................................... 7

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*,
   359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) .............................................................................. 8

*Keranos, LLC v. Silicon Storage Tech.*,
   797 F.3d 1025, 1037 (Fed. Cir. 2015) ...................................................................................... 4

*Keranos, LLC v. Silicon Storage Technology, Inc.*,
   2013 WL 5763738 (E.D. Tex. 2013) ......................................................................................... 7

*Mediostream, Inc. v. Microsoft Corp.*,
   2010 WL 4118589, at *1 (E.D. Tex. Oct. 18, 2010) ................................................................ 4

*Papst Licensing GmBH & Co., KG v. Apple, Inc.*,
   2020 WL 11613777 (E.D. Tex.) ................................................................................................ 4

*S&W Enters., L.L.C. v. Southtrust Bank of Ala.*,
   315 F.3d 533, 535 (5th Cir. 2003) ............................................................................................ 4

*SSMiller IP LLC v. Sugar Beets LLC*,
   2-22-cv-02576 (C.D. Cal. Oct. 21, 2022) ................................................................................. 3

*WSOU Investments LLC v. OnePlus Tech.*,
   6:20-cv-00952, Dkt. 77 (W.D. Tex. Jan. 18, 2022) ................................................................. 2

PUBLIC VERSION
███████████

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| 1 | Exhibit C: Brazos Proposed Preliminary List - Reasonably Similar Products as of April 28, 2022 |
| 2 | Email Thread Regarding ZTE's Intent to File a Motion to Strike WSOU's Infringement Contentions Served After July 16, 2022 |
| 3 | Email Thread with the Court Regarding WSOU's Improper Attempts at a Meet-and-Confer |
| 4 | September 19, 2022 Sealed Motion and Discovery Hearing Transcript |
| 5 | Letter from ZTE to WSOU Regarding Infringement Contentions |
| 6 | May 27, 2022 Order Regarding Discovery Disputes |
| 7 | Brazos' First Amended Final Infringement Contentions -490 |
| 8 | *WSOU Investments, LLC d/b/a Brazos Licensing & Development v. Google LLC*, 6:20-cv-00572; -00580; -00584; -00585 (W.D. Tex.), Joint Motion to Enter Disputed Scheduling Order, Dkt. 121 |

**PUBLIC VERSION**

██████████████████

## I.   INTRODUCTION: WSOU SEEKS EXTRAORDINARY RELIEF OF EXPANDING THE NUMBER OF NAMED DEVICES NEARLY TEN-FOLD

WSOU initially named forty devices across these cases and now WSOU seeks to expand that to more than **_475_** named devices—with approximately one week of fact discovery remaining—under the guise of allegedly necessary source code additions, thereby necessitating denial of WSOU's request to Amended its Infringement Contentions. The source code revisions are minor after-thoughts sprinkled throughout as a transparent effort to distract from WSOU's real requested relief—adding 400 new named devices. This is improper and illustrate the need to preserve party and judicial resources by denying this relief and staying these cases in favor of the pending post-grant proceedings. In addition, WSOU pushed the limits when it chose to burden this Court with duplicative briefing by filing the current pending Motion just days after being notified of ZTE's intent to file a Motion to Strike WSOU's Infringement Contentions (detailing the many deficiencies within every version and all of WSOU's infringement contentions)—and then strategically disregarding the meet and confer process. Therefore, ZTE respectfully requests the Court dismiss WSOU's request of leave for to amend its infringement contentions in order to prohibit WSOU from further unduly prejudicing ZTE with burdensome fact discovery.

## II.   BACKGROUND

### A.   WSOU Missed the Deadline to Serve Its Final Infringement Contentions

WSOU sued ZTE in this Court on June 3, 2020, alleging infringement of eleven different patents, in eleven different cases, with each case concerning only one of the asserted patents. One case, concerning U.S. Pat. No. 8,147,071, was dismissed on October 3, 2022. *See WSOU Investments LLC v. ZTE Corporation et al.*, 6:20-cv-00494-ADA-DTG, Dkt. 230.

On November 3, 2020, WSOU served ZTE with its Preliminary Infringement Contentions alleging infringement by approximately forty devices. The Court set July 16, 2021, as the due date

1

**PUBLIC VERSION**

for serving Final Infringement Contentions without leave,[1] but WSOU nevertheless untimely served its Final Infringement Contentions on July 17, 2021, without leave. Contrary to WSOU's assertion that it "timely served its Final Infringement Contentions in July 2021," serving a document *the day after the deadline* is not considered "timely." WSOU's Final Infringement Contentions remained substantially the same as WSOU's Preliminary Infringement Contentions.

> **B.**      **WSOU Now Seeks to Add Almost 400 New Devices in Yet Another Set of Untimely Infringement Contentions**

Nearly a year after serving its "final" contentions, on April 28, 2022, WSOU requested discovery over thirty-four additional products (effectively doubling the number of named devices). *See* Ex. 1. Shortly thereafter, on May 12th, the Court held a hearing in which ZTE reiterated the deficiencies of WSOU's Final Infringement Contentions stated herein, and then further echoed those deficiencies in a letter dated May 23rd. *See* Exs. 13, 14, p. 35-37; *see also WSOU Investments LLC v. OnePlus Tech.*, 6:20-cv-00952, Dkt. 77 (W.D. Tex. Jan. 18, 2022). The Court agreed that the "more general description of 'reasonably similar products'" is "unworkable." May 12, 2022, Hr'g. Tr. 49:3-7.

Now, WSOU seeks to amend its contentions yet again, and seeks to add additional products to these cases. Despite the Court's caution noted above, however, and aside from sprinkling a few excerpts of source code throughout, WSOU's Amended Final Infringement Contentions remain substantially the same as WSOU's Preliminary Infringement Contentions—and are merely a transparent attempt to expand discovery in these cases ten-fold with the addition of nearly 400 previously non-accused ZTE devices. Rather than seek finality, WSOU seeks to set these cases

---

[1] As provided by the First Amended Scheduling Order and the Standing Order Governing Proceedings (OGP) 4.1, after July 16, 2021, "leave of Court is required for any amendment to Infringement o [*sic*] Invalidity contentions." Dkt. 45. WSOU has not sought leave of Court, nor has the Court granted such a request.

into an indefinite cycle of discovery and burdens for ZTE—a tactic this Court cautioned against. June 7, 2022, Hr'g. Tr. at 29:3-9 and 30:14-17 (the Court seeking timely resolution of discovery and finality of discovery).

### C. WSOU Now Burdens the Court with Duplicative Briefing After Making Inaccurate Certifications to The Court

On October 17, 2022, ZTE contacted WSOU regarding its intent to move to strike any and all of WSOU's Infringement Contentions served after the July 16, 2022, deadline. *See* Ex. 2 at 2. As noted by WSOU in its opening motion, "[t]his would include WSOU's FICs, which were served on July 17, 2021." *See* Dkt. 264, p. 8 n. 8.

ZTE also requested a meet-and-confer with WSOU "before 5PM (CST) Wednesday, October 19, 2022." *Id.* WSOU stalled over 24 hours before responding to inform ZTE that, despite having 31 attorneys-of-record, WSOU was not available to meet-and-confer until Friday afternoon (i.e. a day before WSOU planned to file the underlying Motion to Amended). See *id.* at 1.

Without any advanced notice, nor a single attempt by WSOU to meet-and-confer, WSOU rushed in the filing of its Motion for Leave to Amend its Final Infringement Contentions the *night before* the scheduled meet-and-confer regarding ZTE's Motion to Strike WSOU's Infringement Contentions. Further to ZTE's surprise, WSOU's Motion includes a certification that "counsel for Plaintiff has conferred with counsel for Defendants regarding the relief requested in this motion. Specifically, by email dated October 17, 2022, counsel for Plaintiff confirmed that it is opposed to this motion and requested relief." Dkt. 264, p. 14. Despite WSOU's likely inadvertent assertion that WSOU opposes its own Motion, WSOU *never* conferred with ZTE regarding the relief requested in this motion—and was not forthright with the Court about it.

Upon informing the Court of WSOU's inaccurate certification, WSOU did not deny its failure to satisfy LR CV-7(i). Rather, WSOU simply stated, "[o]bviously ZTE is opposed to the

requested relief" and indicated that it would "address this as well" at the meet-and-confer ZTE scheduled to discuss ZTE's Motion to Strike WSOU's Infringement Contentions. Ex. 3 at 2.

Such a failure to meet-and-confer, where a meet-and-confer is required, has recently been found sanctionable. In *SSMiller IP LLC v. Sugar Beets LLC*, the plaintiff filed a motion without conducting a meet-and-confer, as was required by the local rules. *See SSMiller IP LLC v. Sugar Beets LLC*, 2-22-cv-02576 (C.D. Cal. Oct. 21, 2022) Dkt. 60, at 2. In that case, the plaintiff merely notified defense counsel of its intent to file a motion via voicemail, and then filed the motion the following day. *See id.* The Court, in denying the plaintiff's motion, found that "any future failure to engage in the required meet-and-confer process may result in appropriate sanctions." *Id.*

ZTE abided by the Court's rules in preparing to file its Motion to Strike while WSOU wastes Court resources in an effort to get the first word, simultaneously duplicating the briefing and making inaccurate assertions.

## III.   ARGUMENT: THE COURT SHOULD DENY WSOU'S MOTION FOR LEAVE

### A.   Legal Standard

After the deadline for serving final infringement contentions has passed, "leave of Court is required for any amendment to infringement or invalidity concerns." OGP 4.2 p. 14. Although this Court has not adopted patent-specific local rules, sister courts have prohibited amendments to final infringement contentions absent a showing of good cause. *See, e.g. Papst Licensing GmbH & Co., KG v. Apple, Inc.*, 2020 WL 11613777 (E.D. Tex.); *see also Keranos, LLC v. Silicon Storage Tech.*, 797 F.3d 1025, 1037 (Fed. Cir. 2015) (finding that a district court is "well within its discretion" to refuse a claimant's motion for leave to amend infringement contentions in the absence of diligence). The good cause standard requires the party to show that, despite the exercise of diligence, it cannot reasonably meet the court-mandated deadline. *S&W Enters., L.L.C. v.*

*Southtrust Bank of Ala.*, 315 F.3d 533, 535 (5th Cir. 2003). In deciding whether the good faith

standard has been satisfied, courts consider the following four factors:

> (1) the explanation for the party's failure to meet the deadline, (2)
> the importance of what the Court is excluding, (3) the potential
> prejudice if the Court allows the thing that would be excluded, and
> (4) the availability of a continuance to cure such prejudice.

*Mediostream, Inc. v. Microsoft Corp.*, 2010 WL 4118589, at *1 (E.D. Tex. Oct. 18, 2010)

(citations omitted).

### B.      WSOU Fails to Satisfy the Standard For "Good Cause"

#### 1.      Factor 1: WSOU Has No Reasonable Explanation for Its Failure to Meet the July 16, 2021, Deadline

As an initial matter, WSOU admits to serving its Final Infringement Contentions late—late

is late—yet offers no explanation for its failure to meet Court set deadlines. Sloppy advocacy can

only be excused so many times before it turns vexatious.

Next, the blame for the inexcusable delay in WSOU's First Amendments rests solely on

WSOU. These First Amended Infringement Contentions contain two main amendments—

additions of source code citations and inclusion of more than *400* newly named devices—and

WSOU offers no reasonable explanation for the delay of either. First, despite nearly non-stop

access to the ZTE source code since the opening of fact discovery, WSOU barely revised its

contentions with source code citations (in fact, WSOU failed to amend its contentions based on

the claim construction order). Second, WSOU admits that its addition of more than 400 new

devices is not based in new discovery findings but rather from WSOU's own public searching, and

WSOU failed to explain why it was unable to update its contentions before the July 16th deadline

with this public information. Dkt. 264, p. 4 (estimating that 90% of its Infringement Contentions

came from public sources). For example, WSOU fails to allege that any of the *400* new devices

recently issued for the first time after the July 16th deadline—no excuse for the delay.

Instead of reasonable explanations, WSOU turns this briefing into a discovery dispute red herring tirade. ZTE fully denies WSOU's assertions that ZTE's alleged "delay" justifies WSOU's untimely amendments—when in fact WSOU insisted on proceeding through fact discovery through the *Markman* while many venue issues remained pending. Nevertheless, ZTE also addresses each of WSOU's baseless claims below:

- *ZTE's productions are not severely deficient*. As of the date of WSOU's motion, ZTE produced over 12,000 documents containing technical data, source code, and financial information related to the accused devices. On the other hand, **WSOU has produced only 315 documents**.
- *ZTE complied with all of the Court's discovery orders regarding production of source code and technical documents in a timely manner*. WSOU raves about alleged instances of ZTE's alleged discovery deficiencies but fails to mention the Court found ZTE satisfied production of technical documents in the September 19, 2022, hearing. In that hearing, the Court rejected WSOU's burdensome discovery requests, asking ZTE to compile its production into subcategories, as unwarranted. When asked by the Court, "[a]re those [subcategories] a creation of plaintiff's?" WSOU responded, "I believe they are." Ex. 4 at 42-43. The Court then stated, "I don't believe it's incumbent on ZTE to provide that level of granularity" and "I think [ZTE's] complied with… the requirement to produce technical documents." *Id.* 50.
- *ZTE did not delay raising issues with WSOU's FICs*. ZTE sent WSOU a letter detailing the deficiencies within WSOU's FICs on May 23, 2022, only a few weeks after learning WSOU was expanding the scope of its infringement contentions to add nearly 40 new accused devices. *See* Exs. 1, 5. The actual delay of concern here lies with WSOU, who filed Amended FICs adding nearly 400 new accused devices with only a week remaining until the close of fact while still opposing any kind of stay.

WSOU's repeated ambiguous discovery requests, such as the above, have been the basis of much of the delay and additional productions of which WSOU complains. WSOU's unilateral belief that ZTE hasn't yet satisfied the Court-ordered discovery in full is unfounded.

Lastly, WSOU points to the May 27, 2022, Order, denying-in-part and granting-in-part WSOU's discovery requests, in which the Court allowed discovery over some "reasonably similar products" and provided, "the Court will ***address*** additional reasonably similar products to the extent they are identified." Ex. 6 (emphasis added). But there are multiple concerns with WSOU's use of this statement by the Court as support for its proposition that the Court should order

discovery **over the 400 new accused devices**. Since this hearing over five months ago the Court has expressed its unwillingness to expand these cases nor stay the proceedings. It is time to acknowledge that WSOU seeks to maintain these actions in an indefinite cycle of discovery to burden ZTE with nuances (with multiple invalid patents).

> ### 2.    Factor 2: If WSOU Truly Believes These Amendments are Important, WSOU Should Have Included Them in Earlier Contentions

WSOU fails to identify *specific* amendments necessary to its infringement theories. Instead, WSOU attempts to shoehorn in nearly 400 new devices that it admits it identified by using public sources.[2] This contradicts the entirety of WSOU's Motion and moots WSOU's argument that ZTE's alleged "delay" prevented WSOU from identifying the nearly 400 new accused devices—many of which were released in *2007* (bordering as invalidating prior art systems). These public sources were available to WSOU long before the present litigation ensued[3]—and WSOU was capable of adding the 400 new accused devices in its Preliminary Infringement Contentions. Nevertheless, WSOU failed to exhibit diligence and instead waited until the end of fact discovery.

As part of the good cause showing, the party must demonstrate that it was diligent in discovery of the additional products and in seeking to amend. *See Alexsam Inc. v. IDT Corp.*, 2011 WL 108725, at *1 (E.D. Tex. Jan. 12, 2011); *see also Keranos, LLC v. Silicon Storage Technology,*

---

[2] WSOU's Motion, p. 5 ("Brazos opted to use these same public sources instead of the discovery it expected to receive – but never did – in order to determine the scope of ZTE's products infringing on Brazos's technology.").

[3] *See, e.g.* ZTE Launches ZXR10 E Series Ethernet Switch, ZTE (Sept. 27, 2007) https://www.zte.com.cn/global/about/news/350890.html (news article discussing the 5928E, dated September 27, 2009); ZTE Blade V9 is a Mid-range Smartphone with a Flagship Design, Trusted Reviews (Feb. 28, 2018) https://www.trustedreviews.com/news/zte-blade-v9-price-release-date-specs-3405619  (news article discussing the Blade V9); ZTE Unveils the Blade V10 Smartphone, Featuring 32MP AI 'Smart Selfie' Technology and Octa-Core Processor, PR Newswire (Feb. 25, 2019) https://www.prnewswire.com/news-releases/zte-unveils-the-blade-v10-smartphone-featuring-32mp-ai-smart-selfie-technology-and-octa-core-processor-300801131.html (news article describing the ZTE Blade V10).

*Inc.*, 2013 WL 5763738 (E.D. Tex. 2013) (denying leave to amend infringement contentions upon a finding that the plaintiff had not shown it diligently search for and identified infringing products based on *all of the publicly available information*). In the case at hand, WSOU waited years to amend its infringement contentions to include accused devices that were detailed in publicly available sources long before WSOU served its Preliminary Infringement Contentions. WSOU has demonstrated neither good cause nor diligence in seeking to amend.

WSOU states it "has a strong factual basis for its inclusion of the additional products," but fails to state what that basis is. *See* WSOU's Motion p. 8-9. Courts typically allow good cause to amend to be demonstrated in a variety of ways.[4] WSOU, however, demonstrates none of these. WSOU does not provide any explicit reason why it only recently decided to amend its FICs despite the information used to amend those FICs, and add nearly 400 new devices, having been publicly available for years.

Furthermore, WSOU's First Amended FICs add the nearly 400 new devices by simply listing them in general categories, such as "ZTE Smartphone running Android 4.4 or above,"—i.e. without substantiating how the devices are similar. Ex. 7 at 1. WSOU could have identified the ZTE devices that fall into this category, and others, with publicly available information.[5] And the burden is on WSOU, not ZTE, to search for and identify infringing products to the extent possible

---

[4] *See, e.g. Allvoice Developments US, LLC v. Microsoft Corp.*, 612 Fed. Appx. 1009 (Fed. Cir. 2015) ("Good cause may be demonstrated in various ways, including: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Device which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.") (quoting W.D. Wash. Local Patent R. 124).
[5] ZTE Unveils the Blade V10 Smartphone, Featuring 32MP AI 'Smart Selfie' Technology and Octa-Core Processor, PR Newswire (Feb. 25, 2019) https://www.prnewswire.com/news-releases/zte-unveils-the-blade-v10-smartphone-featuring-32mp-ai-smart-selfie-technology-and-octa-core-processor-300801131.html (specifying the OS capability of the ZTE Blade V10 as Android 9.0, also known as "Android P").

**PUBLIC VERSION**

███████████████

based on publicly available information. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Therefore, ZTE's claim for additional discovery or source code review to identify these new accused devices is unavailing. WSOU should have exercised appropriate diligence by searching all of the publicly available information, and included these new devices in its earlier infringement contentions.

### 3. Factor 3: Granting WSOU's Motion for Leave to Amend Would Effectively Reset the Case and Prejudice ZTE

No reasonable person would agree that the addition of 400 new accused devices, to a case that previously concerned less than 100 accused devices, with only a week remaining in fact discovery would not constitute prejudice, or "minimal to none," as WSOU claims. A further example of WSOU's delusion is its comparison of the production of documents relating to the Ordered Similar Products (which regarded less than 40 devices) to the possible production of the nearly 400 new accused devices. *See* WSOU's Motion p. 9. While the production of the Ordered Similar Products only took a few months, the production of documents related to *ten times the number of devices*, and the preparation of deposition witnesses regarding *ten times the number of devices*, would take exponentially longer.

This is not the first time WSOU has attempted to "reset" a case that had substantially completed fact discovery. In a series of cases WSOU filed against Google, WSOU sought and obtained leave to amend its complaint and infringement contentions. *See* Ex. 8. Despite completing parts of both claim construction and fact discovery, WSOU forced both parties to restart the cases under a new schedule *in accordance with the Court's default schedule* (i.e., WSOU cannot insist on discovery for 400 new devices without ***forcing the restart*** to the entire fact discovery timeline). *Id.* Here, WSOU seeks to reset the case, which previously concerned less than 100 accused devices, to concern almost 500 devices. This would practically reset discovery requirements for ZTE by

introducing new discovery obligations five times greater than the original discovery that ZTE has already completed. Moreover, rather than pursuing a fair schedule, WSOU seeks to reset discovery for ZTE within a schedule that only benefits WSOU at gross prejudice to ZTE. While WSOU has no further discovery obligations as a result of the addition of 400 new product (and WSOU's continued numerous deficient document withholdings, ZTE faces a drastic do-over of discovery.

WSOU's claim that completing discovery over 400 new devices would only amount to "*some* additional work" lacks *any credibility* and is borderline deceptive. Indeed, the addition of 400 new accused devices to this case would severally prejudice ZTE—thereby necessitating reconsideration of staying these cases in view of the growing post-grant proceeding rulings.

### 4. Factor 4: The Only Cure to the Prejudice is an Extension of Fact Discovery and Reconsideration of a Stay Pending the Resolution of Post-Grant Proceedings

Although a continuance and *reset of the entire fact discovery schedule* could not entirely cure the prejudice ZTE would face as a result of the expected increased expense, if the amendment is permitted, a continuance would absolutely be necessary. As an alternative, however, the simplest remedy to cure the prejudice caused to ZTE is reconsideration of the stay of all ten cases pending the post-grant proceedings. Post-grant proceedings have already invalidated 3 of the 11 original asserted patents, thereby simplifying the dispute between the parties. A stay pending the resolution of the remaining *ex parte* reviews and § 101 motions could further simplify, if not entirely resolve, the present dispute.

Alternatively, at a minimum, the fact discovery schedule should be reset to allow ZTE sufficient time to complete discovery over the hundreds of new accused devices.

## IV. CONCLUSION

For the above reasons, ZTE respectfully request the Court deny WSOU's Motion for Leave to Amend its Infringement Contentions.

**PUBLIC VERSION**

███████████████

DATED:  October 27, 2022                    Respectfully submitted,


                                            */s/Lionel M. Lavenue*
                                            Lionel M. Lavenue
                                            Virginia Bar No. 49,005
                                            lionel.lavenue@finnegan.com
                                            **FINNEGAN, HENDERSON, FARABOW,**
                                            **GARRETT & DUNNER, LLP**
                                            1875 Explorer Street, Suite 800
                                            Reston, VA 20190
                                               Phone:  (571) 203-2700
                                               Fax:      (202) 408-4400

                                            Attorney for Defendant,
                                            ZTE Corporation

11

PUBLIC VERSION

███████████████

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via electronic mail

on October 27, 2022.

*/s/Lionel M. Lavenue*
Lionel M. Lavenue
