PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,** | **CIVIL ACTION NO. 6:20-cv-00487-ADA** |
| | **CIVIL ACTION NO. 6:20-cv-00488-ADA** |
| *Plaintiff,* | **CIVIL ACTION NO. 6:20-cv-00489-ADA** |
| | **CIVIL ACTION NO. 6:20-cv-00490-ADA** |
| **v.** | **CIVIL ACTION NO. 6:20-cv-00491-ADA** |
| | **CIVIL ACTION NO. 6:20-cv-00493-ADA** |
| **ZTE CORPORATION,** | **CIVIL ACTION NO. 6:20-cv-00494-ADA** |
| | **CIVIL ACTION NO. 6:20-cv-00495-ADA** |
| *Defendant.* | **CIVIL ACTION NO. 6:20-cv-00496-ADA** |
| | **CIVIL ACTION NO. 6:20-cv-00497-ADA** |

**JURY TRIAL DEMANDED**

**PUBLIC VERSION**

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S FINAL INFRINGEMENT CONTENTIONS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................ 3

III.   LEGAL STANDARD ................................................................................... 5

IV.    ARGUMENT ................................................................................................ 6

       A.     Brazos Properly Charted Its Infringement Theories and Accused Products .......... 7

              1.     The -488 Chart ...................................................................... 8

              2.     The -491 Chart ...................................................................... 9

              3.     The -494 Chart ................................................................... 12

              4.     The -490 Chart ................................................................... 12

       B.     Brazos's Doctrine of Equivalents Theory Should Not Be Stricken .................... 13

       C.     Means-Plus-Function Claims ............................................................ 15

       D.     To the Extent There are Deficiencies, Brazos Should be Granted Leave to
              Amend ........................................................................................ 16

       E.     This Court Did Not Reject Brazos's Contentions in *OnePlus* and the Facts
              in OnePlus Are Different ................................................................. 19

V.     CONCLUSION .......................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'n, Inc.,*
No. 2:10-cv-248, 2011 WL 7036048 (E.D. Va. July 5, 2011).................................16

*Alacritech, Inc. v. Centurylink, Inc.,*
No. 2:16-CV-00693-RWS-RSP, 2017 WL 3593787 (E.D. Tex. Aug. 20, 2017)...................18

*ASUS Comput. Int'l v. Round Rock Rsch., LLC,*
No. 12 Civ. 2099, 2013 WL 5545276 (N.D. Cal. Oct. 8, 2013).............................10

*BASCOM Glob. Internet Servs., Inc. v. AT&T Corp.,*
No. 3:14-CV-3942-M, 2017 WL 11678910 (N.D. Tex. Mar. 17, 2017)...................12, 13, 15

*Blue Spike, LLC v. Texas Instruments, Inc.,*
No. 6:12-cv-499, 2015 WL 11199194 (E.D. Tex. Jan. 12, 2015) ........................5, 6

*Comput. Acceleration Corp. v. Microsoft Corp.,*
503 F. Supp. 2d 819 (E.D. Tex. Aug. 24, 2007) ........................................6

*Creagri, Inc. v. Pinnaclife Inc., LLC,*
No. 11-CV-06635-LHK-PSG, 2012 WL 5389775 (N.D. Cal. Nov. 2, 2012) ........................10

*Dynamic Digital Depth Rsch. Pty. Ltd. v. LG Elecs., Inc.,*
No. CV 15-5578-GW(EX), 2016 WL 7444567 (C.D. Cal. Aug. 30, 2016)............................9

*Endo Pharms. Inc. v. Amneal Pharms., LLC,*
No. 12 Civ. 8060, 2015 WL 9459823 (S.D.N.Y. Aug. 18, 2015), *amended in
part*, No. 12 Civ. 8060, 2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016) ...................10

*Eolas Techs. Inc. v. Amazon.com, Inc.,*
No. 6:15-CV-01038, 2016 WL 7666160 (E.D. Tex. Dec. 5, 2016) ................................13, 15

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.,*
No. 6:09–cv–116, 2010 WL 346218 (E.D.Tex. Jan. 21, 2010) ................................14

*Escort, Inc. v. Uniden Am. Corp.,*
No. 3:18-CV-0161-N, 2019 WL 7900789 (N.D. Tex. Aug. 7, 2019) ....................................16

*FA Sys., LLC v. Amazon.com, Inc.,*
No. 6:11-CV-052-LED, 2013 WL 12147666 (E.D. Tex. June 19, 2013) ..............................18

*Fenner Invs., Ltd. v. Hewlett-Packard Co.,*
No. CIV.A. 6:08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ................................14

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015)...................................15

*Hid Glob. Corp. v. Farpointe Data, Inc.*,
No. SACV101954JVSRNBX, 2012 WL 13018341 (C.D. Cal. Apr. 13, 2012).....................11

*Implicit Networks Inc. v. Hewlett–Packard Co.*,
No. 10-CV-3746 SI, 2011 WL 3954809 (N.D. Cal. Sept. 7, 2011)......................................7, 8

*Kaist IP US LLC v. Samsung Elecs. Co. Ltd.*,
No. 2:16-CV-01314-JRG-RSP, 2018 WL 1806765 (E.D. Tex. Apr. 17, 2018).....................18

*Kenexa Brassring, Inc. v. Taleo Corp.*,
751 F. Supp. 2d 735 (D. Del. 2010) .....................................................................................10

*Network Prot. Scis., LLC v. Fortinet, Inc.*,
No. 12 Civ. 1106, 2013 WL 5402089 (N.D. Cal. Sept. 26, 2013)..........................................11

*Orchestratehr, Inc. v. Trombetta*,
No. 3:13-CV-2110-KS-BH, 2016 WL 4563348 (N.D. Tex. Sept. 1, 2016) .............................6

*Parkervision, Inc. v. Qualcomm Inc.*,
No. 14 Civ. 687, 2015 WL 4751354 (M.D. Fla. Aug. 11, 2015)............................................10

*Saxon Innovations, LLC v. Nokia Corp.*,
No. 6:07-CV-490, 2009 WL 10676646 (E.D. Tex. Nov. 9, 2009) ...........................................9

*Silicon Lab'y Inc. v. Cresta Tech Corp.*,
No. 5:14-CV-03227-PSG, 2015 WL 846679 (N.D. Cal. 2015) .............................................11

*Stored Energy Sys., LLC v. Brunswick Corp.*,
No. 20-cv-06389, 2021 WL 4978448 (N.D. Ill. Aug. 19, 2021) ..............................................6

*Sycamore IP Holdings LLC v. AT&T Corp.*,
No. 2:16-CV-588-WCB, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017)................................14

*Team Worldwide Corp. v. Academy, Ltd.*,
No. 2:19-cv-00092-JRG-RSP, 2020 WL 4601635 (E.D. Tex. Aug. 11, 2020) ................5, 7, 9

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996)..............................................................................................15

*WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co.*,
No. W-20-CV-00952-ADA, 2022 WL 174517
(W.D. Tex. Jan. 18, 2022)......................................................................................................19

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos") files this opposition to Defendant ZTE Corporation's ("ZTE") Motion ("Motion" or "Mot.") to Strike Plaintiff's Final Infringement Contentions (the "FICs").[1]

## I.  INTRODUCTION

ZTE's Motion is merely a distraction from Brazos's motion to amend its contentions.  Indeed, Brazos's First Amended Final Infringement Contentions ("First Amended FICs") resolve or moot many of the purported deficiencies that ZTE complains of, and ZTE's arguments as to the remainder are baseless.  ZTE was apparently so wed to its motion to strike Brazos's FICs that it basically ignores the actual content of the First Amended FICs and seeks desperately to prevent Brazos from amending at all.  ZTE cannot on the one hand attack the sufficiency of the FICs in its Motion and oppose Brazos's amendments in its opposition to Brazos's Motion to Amend (Dkt. 274).[2]

ZTE's purported bases for the relief it seeks are in fact nonexistent.  ZTE contends that seventy of the Accused Products are purportedly "uncharted," but seeks to strike all of Brazos current contentions "in full".[3]  (Mot. at 1, 3.)[4]  And while ZTE contends that many of the Accused Products are "uncharted," its argument is undermined by its own reference to *thousands* of pages of infringement contentions with detailed claim charts (ZTE Exs. 15-24, 26-35).  ZTE bizarrely

---

[1]  Capitalized terms used but not defined shall have the meanings ascribed to them in the Motion.

[2]  All docket cites are to the 20-cv-00487-ADA case unless otherwise noted.

[3]  Brazos disagrees with ZTE's characterization of the Accused Products.  (Mot. at 5-6).  ZTE fails to list all Accused Products and fails to identify which products are accused of infringing which patent.  (*Id.*).  However, for purposes of this Motion, Brazos addresses the specific products ZTE seeks to exclude.  Brazos does not concede that ZTE's constricted list of products represents all of the Accused Products.

[4]  Separately pending is Brazos's Motion to Amend its Contentions.  (Dkt. 264).  In an effort to distract, ZTE attempts to conflate that motion with the instant motion.  The instant motion relates only to ZTE's baseless request to strike the FICs.

admits that at least four groups of products are charted yet nonetheless seeks to exclude those groups in their totality.  (Mot. at 5 (showing groups of products that ZTE admits *were* charted).)

While ZTE claims that seventy products are "uncharted" and supposedly only four "lone" products are mapped to the claims (Mot. at 1-3), that is simply wrong.  As shown below, each of the products are either: (1) charted (and simply misrepresented by ZTE as being uncharted); (2) part of a charted series (which ZTE admits to be properly charted); (3) represented by analogous products that work identically; or (4) have become moot because either the patents have been invalidated or the products are no longer being asserted against the particular patent.

Similarly untrue is ZTE's repeated contention that Brazos is adding 450+ Accused Products in the First Amended FICs.  (Mot. at 13).  As a preliminary matter, the First Amended FICs do not add claims, nor do they change the underlying infringement theories.  This is false and a correct read of the FICs demonstrate that the vast majority of the Accused Products that Brazos seeks to "add" fall into one or more of the following four categories: (1) products that were already accused in the FICs under the "Series" name, (2) versions of a same Accused Product that ZTE has improperly withheld discovery on, (3) Accused Products subject to the May 12, 2022 Order of the Court requiring ZTE to produce discovery on reasonably similar products; or (4) Accused Products that were already identified in the claim charts, but not listed in the cover pages. Ultimately, Brazos is only adding 93 products that were not already accused or part of discovery. (*See* Dkt. 288 at Exs. 7-8.)

The rest of ZTE's arguments are an exercise in revisionist history; it blames Brazos for delays occasioned by ZTE's own malfeasance, including its extensive and unreasonable discovery abuses.  As shown below, any delay in Brazos amending its infringement contentions stems from

that misconduct, and ZTE's attempted misdirection should be rejected.  At bottom, ZTE cannot meet its heavy burden to strike Brazos's contentions.

## II.   FACTUAL BACKGROUND

On June 3, 2020, Brazos filed the aforementioned cases against ZTE.  After a full year of disputes regarding venue, Brazos *timely* served its FICs on July 16, 2021, as required by the then current scheduling order.  (*See* Ex. 1 (July 17, 2021 email from L. Lavenue email to R. Loveless referring to FICs that were served "last night," *i.e.*, on July 16).)[5]

The FICs were served well in advance of the March 3, 2022 claim construction hearing (Dkt. No. 181), and without the benefit of fact discovery.  Indeed, Brazos was given access to source code for the first time in April 2022, which ZTE supplemented through August 2022, pursuant to the Court's June 7, 2022 order, which instructed ZTE to remediate its deficient source code production.  (Dkt. No. 232.)  In fact, ZTE's production of source code and technical documents remain incomplete.  Brazos estimates that 90% of the production, despite being designated "Attorneys Eyes Only," stems from public sources.  Out of the roughly 100,000 irrelevant pages produced, Brazos lacks ZTE internal documents showing how the Accused Products operate.  ZTE again supplemented its source code production in November 2022 and ZTE's witnesses are to be tendered for the first time for deposition in late December 2022 (only after ZTE was *repeatedly* ordered to do so).  Despite ZTE's obstructions, Brazos adequately identified the Accused Products and infringement theories to ZTE in the Complaint, Preliminary Infringement Contentions, FICs, and multiple discovery requests regarding products infringing on accused functionalities.  (*See e.g.,* ZTE Exs. 1-12, 26-35, and Ex. 2.)  ZTE did not object to the

---

[5]  Submitted herewith and relied upon is the Declaration of Jonathan K. Waldrop, dated November 11, 2022 ("Waldrop Declaration" or "Waldrop Decl.").  "Ex." refers to exhibits attached to the Waldrop Declaration.

definition of Accused Products or Accused Instrumentalities of the asserted claims up until now. (*See e.g.,* ZTE's Responses and Objections to Brazos Requests for Productions and Interrogatories, Ex 3.)

Having sat on its hands and allowed litigation to proceed for nearly one and a half years since Brazos's FICs were served, ZTE belatedly moves to strike them.  During that time, ZTE actively litigated these cases and challenged Brazos's choice of venue, standing, and the Court's jurisdiction, but not its contentions.  Only on May 23, 2022, did ZTE's counsel allege that the FICs were inadequate, going so far as to say that it was "troubling that—despite Brazos's numerous amendment opportunities—these deficiencies yet remain."  (Mot. Ex. 13.)  That awakening by ZTE came only in response to this Court order on May 12, 2022 (the "May 12 Hearing") compelling ZTE to produce discovery on products reasonably similar to the Accused Products. (Dkt. 222.)  During that hearing, Brazos's counsel pointed out that ZTE had never moved to strike *any* infringement contentions, an observation which clearly triggered ZTE's counsel to make its untimely complaints regarding the sufficiency of the FICs. (Mot. Ex. 14, Tr. at 34:13-17.)  On June 20, 2022, Brazos responded to ZTE's May 23 letter, reminding ZTE of its obligations to cure discovery deficiencies pursuant to multiple orders of the Court.  (Ex. 4.)  Brazos's June 20, 2022 letter also responded to each of ZTE's deficiency allegations and demonstrated that the Claims to all Accused Products were appropriately mapped and tethered to the Accused Products.  (*Id.*)

After completing its review of the (deficient) source code production in August, Brazos served its First Amended FICs on September 27, 2022 (Ex. 5; Mot. Exs. 1-10.)  The First Amended FICs clarify the universe of the products accused after months of discovery disputes, requiring no fewer than ten discovery dispute hearings before the Court, during which ZTE attempted to limit the scope of the Accused Products to evade its discovery obligations.  For instance, ZTE has

consistently refused to provide discovery on iterations of the same Accused Product.  (*See e.g.*, Ex. 6 (ZTE declining to provide discovery on Axon 30, arguing that only the Axon 30 5G is accused.))  The First Amended FICs also incorporate additional similar products, including the products identified by Brazos and this Court as reasonably similar at the May 12 Hearing, as well as products indicated by source code that had only been produced in April through August (in a severely deficient form).  In doing so, the First Amended FICs cure any purported deficiencies alleged by ZTE.  Having unreasonably delayed challenging the FICs, ZTE now seeks to use purported deficiencies in them as a sword to cut off Brazos's claims while shielding itself from amendment of those FICs.  (Mot.)  Indeed, ZTE sought to strike the FICs just a day after Brazos sought leave to amend its FICs (Dkt. 264), yet waited more than a year and a half to complain about them.  ZTE's obvious litigation tactics should be seen for what they are—yet another tactic in a long line of attempts to delay the resolution of these cases.

### III.    LEGAL STANDARD

Motions to strike infringement contentions are viewed unfavorably:    "Striking infringement contentions is an extreme decision comparable to determining 'whether evidence should be excluded for discovery violations.' . . . Courts are thus hesitant to strike contentions without evidence of unreasonable delay and prejudice."  *Team Worldwide Corp. v. Academy, Ltd*., No. 2:19-cv-00092-JRG-RSP, 2020 WL 4601635, at *3 (E.D. Tex. Aug. 11, 2020).  As the court noted in *Blue Spike, LLC v. Texas Instruments, Inc*., No. 6:12-cv-499, 2015 WL 11199194 (E.D. Tex. Jan. 12, 2015): "[Striking infringement contentions] is a request so severe that when a plaintiff timely provides infringement contentions and 'attempts to address any deficiencies through supplemental infringement contentions,' granting a motion to strike 'would amount to a death-penalty sanction.' . . .  Therefore, courts are hesitant to strike contentions absent evidence of

unreasonable delay and prejudice." *Id*. at *2 (denying motion to strike infringement contentions). *See also Stored Energy Sys., LLC v. Brunswick Corp*., No. 20-cv-06389, 2021 WL 4978448, at *2 (N.D. Ill. Aug. 19, 2021) ("Striking a patentee's infringement contentions 'is a severe sanction that should be used sparingly and only for good cause.'").

In considering motions to strike, courts consider: "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) the danger of unfair prejudice; and (4) the availability of a continuance and the potential impact of a delay on judicial proceedings." *Comput. Acceleration Corp. v. Microsoft Corp*., 503 F. Supp. 2d 819, 822 (E.D. Tex. Aug. 24, 2007).  Courts further consider whether "the offending party was diligent in seeking an extension of time, or in supplementing contentions, after an alleged need to disclose the new matter became apparent." *Id*.

ZTE bears the burden of showing that exclusion is proper.  *Orchestratehr, Inc. v. Trombetta*, No. 3:13-CV-2110-KS-BH, 2016 WL 4563348, at *15 (N.D. Tex. Sept. 1, 2016).  It cannot meet that burden.

## IV.    ARGUMENT

ZTE's Motion grossly misrepresents the record and is inherently inconsistent in that the very products ZTE complains purportedly are uncharted appear repeatedly throughout Brazos's FICs appended to ZTE's own Motion.  Moreover, ZTE admits that Brazos charted series of ZTE products, but complains that models within those series remain uncharted.  For those reasons, among others, and as shown below, ZTE fails to meet its heavy burden to strike any of Brazos's contentions.

A.      **Brazos Properly Charted Its Infringement Theories and Accused Products**

ZTE seeks to exclude all Accused Products because it baselessly claims seventy Accused Products were "uncharted" or that Brazos failed to show that these products are represented by other charted products.  Mot. at 7-8.  ZTE also misquotes Brazos's contentions and artificially attempts to limit Brazos's contentions to "four lone" charts.  ZTE's arguments fail.  In fact, a simple—and accurate—review of Brazos's infringement charts shows that Brazos adequately disclosed all of the products about which ZTE complains.

For example, as shown below: (1) several of the products ZTE argues are purportedly "uncharted" altogether are actually described in Brazos's claim charts; (2) Brazos properly grouped ZTE's series products together (ZTE admits as much but argues inconsistently that members of those same series are "uncharted."  (Mot. at 5-6)); and (3) analogous products that function identically are grouped together and represented by one or more products.[6]  *See infra* §§ IV.A.1-IV.A.4.  Following the Court's guidance from recent rulings, Brazos identified the reasons for the product similarity in the contentions.  (*See e.g.*, Mot. Exs. 15 at 2, 16 at 1-2, 17 at 1, 18 at 1, 19 at 1, 20 at 1, 21 at 1, 22 at 1, 23 at 2-3, 24 at 1-3.)  Moreover, Brazos included several of those analogous products in the actual claim charts to provide a fulsome disclosure.  (*See generally* Mot. Exs. 15-24.)  Finally, other products on which ZTE bases its arguments are simply no longer in play, such as ZTE smartphones in the -488 case.  (*Compare* Mot. Ex. 16 at 1-2 *with*

---

[6] Courts do not require that each and every instrumentality be charted.  *Team Worldwide Corp.*, 2020 WL 4601635, at *2 (citing cases) ("Courts have excused plaintiffs from charting each instrumentality if the charts would be identical or if one instrumentality is sufficiently representative of others.").  For example, courts have approved using a single claim chart to represent 120 products where the patentee "relied primarily on citations to manuals and other documentation to explain characteristics of other accused products."  *Id.* citing *Implicit Networks Inc. v. Hewlett–Packard Co.*, No. 10-CV-3746 SI, 2011 WL 3954809 (N.D. Cal. Sept. 7, 2011).

Mot. Ex. 27 at 1.)  Had ZTE accurately reviewed/honestly represented the claim charts, it could not in good faith have brought the instant motion.

ZTE bases its argument exclusively on the -490, -488, -491, and -494 charts.[7]  ZTE baselessly asserts that Brazos's contentions show nothing more than an Android 10 Operating system or an industry standard (Mot. at 8-10), but that argument is belied by the hundreds of pages of charts provided by Brazos describing the products and functionalities accused (Mot. Exs. 29, 27, 30, 32).  A cursory review of those charts show far more detail than ZTE asserts.  A review of each of those charts wholly eviscerates ZTE's arguments.

### 1.    The -488 Chart

ZTE's complaints regarding the -488 Chart (Mot. at 8, n. 4) are simply unfounded.  First, ZTE ignores that Brazos significantly *narrowed* the case and *reduced* the number of Accused Products in its First Amended FICs for this patent.  For example, Brazos *removed all* accused smartphones from its contentions in its Amendment.  (*Compare* Mot. Ex. 16 at 1-2 *with* Mot. Ex. 27 at 1.)  Thus, issues ZTE complains about have already been addressed.  Second, several examples of the purportedly "uncharted" products about which ZTE complains are *specifically referenced* in the charts.  (*E.g.*, Mot. Ex. 27 at 5-7 (specifically describing BS8800, BS8900A, and 8900B, which ZTE claims are "uncharted").)  Third, ZTE itself groups the accused base station products together and even describes them in a single manual.  (*Id*. at 1, 5-7 (citing Exhibit D, ZTE's *Macro Base Station* Manual)); *see also Implicit Networks Inc.*, 2011 WL 3954809, at *2 (finding adequate disclosure of multiple products where the patentee cited to "HP manuals").  Fourth, the Accused Products for this specific patent are all ZTE base stations—which ZTE does

---

[7] ZTE fails to address any other Brazos claim chart, and with good reason; it has no valid basis to attack them.

not dispute—that provide the same accused functionality and function identically.  (Mot. Ex. 16 at 1-2.)  It is entirely proper for Brazos to group those products together in its claim charts.  *Team Worldwide Corp.*, 2020 WL 4601635, at *2 ("Courts have excused plaintiffs from charting each instrumentality if the charts would be identical or if one instrumentality is sufficiently representative of others").

### 2.    The -491 Chart

ZTE complains similarly that not all Accused Products are charted in the -491 Chart.  (Mot. at 8, n. 4.)  Again, ZTE is wrong.  For example,  ZTE erroneously contends that the AT&T Velocity 2 is "uncharted."  (Mot. Ex. 25 at 2.)  In fact, AT&T Velocity 2 is specifically identified and described throughout Brazos's contentions.  (*See e.g*., Mot. Ex. 30 at 3, 19, 27, 45, 88, 101, 140, 153, 263, 276, 288, 300, 344, 357, 396, 408, 421, 434, 551, 576, 588, 600, 618, 648, 661, and 674 (describing AT&T Velocity 2).)  Moreover, the claim charts are representative of analogous products as those products are all ZTE smartphones, ZTE hotspots, and ZTE routers which contain hardware components and software modules that provide Wi-Fi connectivity *in the very same way*.  And ZTE does not—because it cannot—assert that any of the grouped Accused Products work differently than other products in that same group.  (*See, e.g*., Mot. Ex. 19 at 1-6, 17-20, 31-33, 36-38, 48-51, 88-95;) *see also Saxon Innovations, LLC v. Nokia Corp*., No. 6:07-CV-490, 2009 WL 10676646, at *3 (E.D. Tex. Nov. 9, 2009) ("the Court finds that other products utilizing the same chipsets, or chipsets that possess the same capabilities and functionalities, i.e. phones, are reasonably similar to the accused products, i.e. mobile computers, for the purposes of obtaining discovery"); *Dynamic Digital Depth Rsch*. *Pty. Ltd. v. LG Elecs., Inc.*, No. CV 15-5578-GW(EX), 2016 WL 7444567, at *1 (C.D. Cal. Aug. 30, 2016) (denying defendant's motion to strike and noting that "[c]ombination claim charts (whereby the party asserting infringement describes how

multiple products infringe the asserted patent(s) in a single chart) can provide the required specificity . . . *if* each accused product allegedly infringes in the same way") (emphasis in original); *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11-CV-06635-LHK-PSG, 2012 WL 5389775, at *3 (N.D. Cal. Nov. 2, 2012) (allowing grouping of products that contain the same accused feature).

ZTE also argues that Brazos relies on "standards in lieu of charting" to support its contention that Brazos has not properly charted all Accused Products. (Mot. at 9.) According to ZTE, the *only* way analogous products may be grouped together in a single chart is if the patent is standard essential, *i.e.*, that each and every limitation reads solely and exclusively on mandatory portions of a standard. (Mot. at 2, 9, 14.) But that is incorrect. Analogous products may be grouped together for a number of reasons, including, *inter alia*, where the products are be part of the same series or product line, work the same way, contain the same software components or utilize the same operating system, or contain the same active ingredients. *See, e.g.*, *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 747 (D. Del. 2010) (finding plaintiff products within product lines "function the same way for purposes of patent infringement within their respective product lines"); *Parkervision, Inc. v. Qualcomm Inc.*, No. 14 Civ. 687, 2015 WL 4751354, at *4 (M.D. Fla. Aug. 11, 2015) (denying motion to strike after finding it adequate that plaintiff's infringement contentions "accuse[] a large number of products and assert[] that each accused product infringes the asserted technology in the same way"); *Endo Pharms. Inc. v. Amneal Pharms., LLC*, No. 12 Civ. 8060, 2015 WL 9459823, at *36-37 (S.D.N.Y. Aug. 18, 2015), *amended in part*, No. 12 Civ. 8060, 2016 WL 1732751 (S.D.N.Y. Apr. 29, 2016) (finding that defendants infringed on patent claims because their products all contained an active ingredient which overlapped with claim limitations); *ASUS Comput. Int'l v. Round Rock Rsch., LLC*, No. 12 Civ. 2099, 2013 WL 5545276, at *3 (N.D. Cal. Oct. 8, 2013) (collecting cases where courts

approved of infringement contentions alleging that all accused products infringe in the same way "by containing components that infringe in the same manner as the representative, charted product"); *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12 Civ. 1106, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013) (denying defendant's motion for summary judgment and finding it sufficient that plaintiff in its claim charts "listed all of the accused products individually and used the FortiOS 4.0 MR2 product as a representative example"); *Hid Glob. Corp. v. Farpointe Data, Inc.*, No. SACV101954JVSRNBX, 2012 WL 13018341, at *3 (C.D. Cal. Apr. 13, 2012) (grouping products by series and explaining, "the properties of the accused devices by product series because the hardware and software relevant to the patent claims at issue are substantively the same among the individual products within a product series").[8]

Indeed, the weakness of ZTE's argument is evident from the fact that, to support its position, it cites a *single page* of Brazos -491 Chart, a 704-page document. (Mot. at 10 citing Mot. Ex. 30.)  Again, unable to address the dozens of pages in the chart specifically describing the products ZTE claims are "uncharted," ZTE simply ignores them, apparently hoping the Court will do the same.  ZTE claims that Brazos's contentions merely recite standard IEEE 802.11ac, but again that is wrong.  (*Id.*)  Brazos's claim charts not only point out where accused products read on certain industry standards, but also provide an in-depth discussion of how the products meet

---

[8] ZTE's reliance on *Silicon Laboratories Inc. v. Cresta Technology Corporation*, No. 5:14-CV-03227-PSG, 2015 WL 846679, at *2 (N.D. Cal. 2015) is misguided.  Unlike defendant in that case, ZTE has never asserted that any of the accused instrumentalities work differently with respect to the accused functionality. (Mot. at 9-10.)  And  the defendant in *Silicon Laboratories* specifically asserted that analogous products used "different wireless communication systems."  *Silicon Laboratories*, No. 5:14-CV-03227-PSG, 2015 WL 846679, at *2.  ZTE makes no such claim here. In any event, the court in *Silicon Laboratories refused* to strike infringement contentions, granting leave to amend them instead.  *Id.* at *3.

each limitation.  (*See, e.g.*, Mot. Ex. 30 at 2, 14, 26-27, and 44 (citing ZTE Axon 10 technical

document); *see also id*. at 3, 15, 27, and 45 (citing Velocity 2 technical document).)

### 3.   The -494 Chart

ZTE argues that not all products are charted in the -494 Chart.  (Mot. at 8-9, n. 4 n. 5.)

That is wrong for the same reasons described above.  In fact, ZTE concedes that the "5960 ***series***"

was properly charted (Mot. Ex. 25 at 2), but then complains incongruously that individual products

*within* that 5960 series remain uncharted.  A product in a series can be representative of the other

accused products "in the same product series" and there is no dispute that ZTE's 5960 products

are all part of the same series.

In yet another misrepresentation, ZTE complains that ZXR10 5960-H Series is uncharted

where the applicable claim chart (appended to ZTE's own Motion) specifically references and

describes that product (Mot. Ex. 32 at 1-2, 4, 66, 121, 125, 145, and 148) and specifically cites to

that particular product's manual.  (*Id*. at 1-2 (referencing Ex. D, *ZXR10 5960-H Series Switch Data

Sheet*).)  Moreover, each of the Accused Products are reasonably similar to the charted products

because all analogous products are ZTE Switches that contain hardware components and software

modules that are configured to offer the Quantized Congestion Notification (QCN) protocol.  (Mot.

Ex. 32.)  Put simply, the products ZTE alleges are "uncharted" are: (1) in the charts, (2) part of the

same series, and/or (3) all part of the same group that work the same way with respect to the

accused functionality.

### 4.   The -490 Chart

The -490 Chart (Mot. at 8, n. 4) is also sufficient for the reasons forth above.  Any lack of

detail in that chart is purely a result of ZTE's unrelenting, improper discovery stonewalling.  The

Court should not reward that naked gamesmanship.  *See BASCOM Glob. Internet Servs., Inc. v.*

*AT&T Corp.*, No. 3:14-CV-3942-M, 2017 WL 11678910 (N.D. Tex. Mar. 17, 2017) (denying defendant's motion to strike the plaintiff's infringement contentions where defendant had refused to allow plaintiff to obtain necessary discovery); *Eolas Techs. Inc. v. Amazon.com, Inc*., No. 6:15-CV-01038, 2016 WL 7666160, at *2 (E.D. Tex. Dec. 5, 2016) ("given Plaintiff's assertion that Defendants have not produced all documents and code reflecting their server architectures, it is unreasonable to expect Plaintiff to draft ICs in great detail.").

Moreover, ZTE's entire argument regarding the -490 Chart is moot given that the PTAB invalidated the asserted claims in that case.  (Ex. 7 (IPR2021-00696 Final Written Decision (Oct. 13, 2022)).)  ZTE knew this more than a week before filing the instant motion, yet brought this frivolous motion complaining about the sufficiency of the charts for the very same patent. ZTE's complaints are nothing more than an irrelevant distraction.

ZTE has not shown any cognizable deficiency in Brazos's infringement contentions.  To the extent the Court finds any of Brazos's contentions deficient—which they are not—such deficiency is purely a result of ZTE's unrelenting, improper discovery stonewalling, which it now seeks to use as a basis for precluding Brazos's amendment of its FICs.  The Court should not reward that naked gamesmanship. *See BASCOM Glob. Internet Servs.,* 2017 WL 11678910; *Eolas Techs.*, 2016 WL 7666160, at *2.

### B.    **Brazos's Doctrine of Equivalents Theory Should Not Be Stricken**

Equally meritless is ZTE's premature request that the Court strike Brazos's doctrine of equivalents theory ("DOE") for lack of specificity.  (Mot. at 10-11.)  No expert discovery has yet taken place, and this Court has already noted that the basis for infringement allegations would be submitted as part of expert reports:

| MS. KIM: | The basis of our infringement allegations, to the extent there are more, will be forthcoming in our expert reports when those are due. |
| THE COURT: | I agree with that.  I think that's the way it's done in my court. |

(Ex. 8 (March 3, 2022 Hr'g Tr.) at 17:18-24.)  As the Court explained, Brazos's contentions serve to put ZTE on notice of its theories, whereas the basis of those theories will be further developed as part of expert reports.  *See also Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. CIV.A. 6:08-CV-273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010) ("The scope of infringement contentions and expert reports are not, however, coextensive.  Infringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case,' […] whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them") (quoting *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09–cv–116, 2010 WL 346218, at *2 (E.D.Tex. Jan. 21, 2010)).  ZTE is essentially seeking to leap-frog past expert discovery.

ZTE's Motion is also simply unsupported factually and legally.  The sole example of DOE ZTE provides is an excerpt from the claim chart referencing the *preamble* of a single claim.  (Mot. at 11.)  ZTE has not asserted that this preamble is limiting, so the cited example is irrelevant.

Similarly, the case law cited by ZTE does not support its position.  For example, *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-CV-588-WCB, 2017 WL 4517953, at *2 (E.D. Tex. Oct. 10, 2017) is inapplicable because there the patentee delayed nine months before disclosing their DOE theories, should have known of those theories from prior litigation, and failed "to seek leave of court to amend its infringement contentions."  Here, other than erroneously claiming that Brazos's FICs were a day late, ZTE is not asserting that there was any delay or prior litigation as

14

a basis of striking Brazos's FICs.  Moreover, in this case ZTE has timely amended its contentions and sought leave to further amend them.  (Dkt. 264.)

*Texas Instruments Inc. v. Cypress Semiconductor Corp*., 90 F.3d 1558, 1560 (Fed. Cir. 1996) is similarly inapposite because it is an appeal from a judgement as a matter of law, not a motion to strike.  Nowhere did the court address the sufficiency of infringement contentions.  *Id*. Finally, *Finjan, Inc. v. Proofpoint, Inc*., No. 13-CV-05808-HSG, 2015 WL 1517920, at *10 (N.D. Cal. Apr. 2, 2015) supports *Brazos*, not ZTE, as the court specifically allowed amendment to the contentions if discovery provided a basis for such amendment.  That is exactly the case here, as Brazos showed in its motion to amend.  (Dkt. 264 at 7-10); *see also BASCOM Glob. Internet Servs., Inc.* , *supra* at 13; *Eolas Techs. Inc.*, *supra* at 13.

C.    **Means-Plus-Function Claims**

ZTE's request that the Court strike infringement contentions related to means-plus-function claims related to the '534 patent (Mot. at 11-12) is not only moot, but also baseless.

The only means-plus-function claims ZTE complains of relate to the '534 patent.  Those claim charts are sufficient.  (*See* Mot. Ex. 34.)  Any lack of detail in that claim chart is purely a result of ZTE's unrelenting, improper discovery stonewalling.  The Court should not reward that naked gamesmanship.  *See BASCOM*, 2017 WL 11678910 (denying defendant's motion to strike the plaintiff's infringement contentions where defendant had refused to allow plaintiff to obtain necessary discovery); *Eolas*, 2016 WL 7666160, at *2.

Moreover, ZTE's entire argument regarding the '534 Patent is moot given that the PTAB invalidated the asserted claims in that case an entire week before ZTE brought the instant motion. (Ex. 9 (IPR2021-00699 Final Written Decision (Oct. 14, 2022)) at 84.)  ZTE knew this a week before filing the instant motion, yet brought this frivolous motion complaining about the

15

sufficiency of the charts for the very same patent. ZTE's complaints are nothing more than an irrelevant distraction.

### D.   To the Extent There are Deficiencies, Brazos Should be Granted Leave to Amend

Brazos should be granted leave to amend for the reasons set forth in its motion to amend. (Dkt. 264.) ZTE blatantly mischaracterizes the events leading to that motion. First, ZTE argues for the first time that Brazos's FICs were served late. (Mot. at 12.) But as ZTE knows, Brazos's FICs were timely served on July 16, 2021. Indeed, on July 17, 2021, ZTE's counsel emailed Brazos's counsel complaining that he was unable to open Brazos's FICs that were provided "last night," *i.e.*, on July 16. (Ex. 1 (L. Lavenue email to R. Loveless).)[9]

ZTE's argument that Brazos is to blame for any delays in its ability to amend its FICs and that "Brazos had ample time to correct its contentions during the six months of source code review" (Mot. at 12-13) is a gross reversal of causality. As Brazos showed in its motion to amend its FICs and its reply brief in support of that motion (Dkt. No. 264 at 2-5; Dkt. No. 288 at 1-3), ZTE's inexcusable delays in producing responsive documents—including technical documents—and concocted excuses to block Brazos's access to ZTE's source code prevented Brazos from effectively amending its FICs sooner. Thus, while Brazos requested source code access beginning with its Request for Production No. 1 in June, 2021, ZTE resisted at every turn, baselessly claiming that Brazos's requests were informal, improper or unreasonable, and was ordered to either

---

[9] Even had Brazos's FICs been a day late—which they were not—ZTE has continued to litigate this matter for more than a year since those FICs were served without contesting their timeliness or moving to strike them until now. It certainly would not be prejudiced by a one-day delay, which in any event did not occur. *See, e.g., Escort, Inc. v. Uniden Am. Corp.* No. 3:18-CV-0161-N, 2019 WL 7900789, at *1 (N.D. Tex. Aug. 7, 2019) ("Courts have broad discretion to grant untimely motions to supplement . . . infringement contentions"); *ActiveVideo Networks, Inc. v. Verizon Commc'n, Inc.*, No. 2:10-cv-248, 2011 WL 7036048, at *2 (E.D. Va. July 5, 2011) (denying motion to exclude untimely contentions where defendant was not prejudiced).

"immediately produce" or supplement source code on several occasions.  (*See, e.g.*, Dkts. 185, 232.)  Brazos only—finally—gained access to ZTE's source code in April 2022.  Moreover, ZTE's source code production even then was deficient, and Brazos was forced to move to compel further access to it, which ZTE only provided in August 2022, with the latest substantial production in November 2022, post close of fact discovery.  (Ex. 10.)  Indeed, under ZTE's tortured approach, Brazos would have had to repeatedly amend its FICs to accommodate ZTE's "rolling" trickle of document production and strangled source code access.  Moreover, ZTE has yet to tender a single witness for deposition, despite being ordered to do so many times.  The notion that *Brazos* acted laconically here is simply false.

ZTE also overstates the effect and scope of Brazos's First Amended FICs.  First, the First Amended FICs do not add claims, nor do they change the underlying infringement theories.  Second, contrary to ZTE's contentions (Mot. at 13), Brazos does not seek to add 400 entirely new devices to these cases.  Rather, Brazos seeks to: (1) add the Accused Products subject to the May 12, 2022 Order requiring ZTE to produce discovery on reasonably similar products; (2) explicitly list products that were accused in the FICs under the "Series" name but not under each sub-model name[10]; (3) add versions of devices that were improperly withheld from discovery thus far[11]; (4) for clarity, include products that were already identified in the claim charts, but not listed in the cover pages[12]; (5) add Accused Products identified as infringing during discovery; and (6)

---

[10] For instance, Brazos accused, and ZTE admits that Brazos charted, the ZXR10 5900 *Series* in the FICs (Mot. at 5), and the amendments (as well as the FICs) further specify all infringing devices in this Series, including ZXR10 5916E, ZXR10 5928E-FI, and ZXR10 5952E.

[11] For example, Brazos accused the Axon 30 Ultra, and the First Amended FICs list the Axon 30 Pro, Axon 30 5G, and Axon 30 Ultimate.

[12] For example, Brazos accused the Velocity® 2 in the -491 Chart for the Axon 10 Pro; it is therefore not an addition.

remove any products for which infringement is no longer being asserted.[13]  Brazos vigorously

pursued discovery in the hope that discovery would include production of ZTE's internal technical

documents, on which infringement contention amendments could be based.  As ZTE's production

of such internal documents was anemic at best, and the Court only recently directed that further

deficiencies in ZTE's technical document production should be pursued in depositions (Ex. 11

(Sept. 19, 2022 Hr'g Tr.) at 50:14-20, Dkt. 266), Brazos had to come to terms with relying on

obscure third-party website technical specifications in order to identify ZTE's infringing products.

(*See, e.g.*, Ex.12, ZTE-WSOU-00043575 (relying on https://www.devicespecifications.com/en/

brand/60dd29.)  ZTE's audacious, feigned claim to be either surprised or prejudiced by Brazos's

motion to amend its FICs now rings hollow and should be rejected.  *See, e.g., Kaist IP US LLC v.*

*Samsung Elecs. Co. Ltd*., No. 2:16-CV-01314-JRG-RSP, 2018 WL 1806765, at *3 (E.D. Tex. Apr.

17, 2018) (granting motion to amend infringement contentions adding "over 100 new products"

where, *inter alia*, "Plaintiff's infringement theory has not changed"); *Alacritech, Inc. v.*

*Centurylink, Inc*., No. 2:16-CV-00693-RWS-RSP, 2017 WL 3593787, at *2 (E.D. Tex. Aug. 20,

2017) (even where plaintiff was late in moving to amend to add "over 400 additional products" to

infringement contentions, court allowed amendment where defendant "should not be surprised by

the addition of these products" and court "prefers to resolve the infringement issue concerning as

many of these additional instrumentalities as possible in one case rather than have [plaintiff]

initiate a separate action"); *FA Sys., LLC v. Amazon.com, Inc*., No. 6:11-CV-052-LED, 2013 WL

12147666, at *3 (E.D. Tex. June 19, 2013) (granting motion to amend contentions based on

publicly available information where defendant knew accused system involved access by other

---

[13] For instance, Brazos removed all accused smartphones from its -488 Chart.

devices being added and denying motion would "unnecessarily waste the Parties' and the Court's resources, as identical claims would need to be brought against the same accused system").

To cover up its own abuses, ZTE again accuses Brazos of failing to provide adequate charts. (Mot. at 13.) But that is more smoke and mirrors. As shown above (*supra* §IV.A), ZTE has either failed to read accurately or is blatantly misrepresenting the charts, as the products it claims are not properly charted: (1) are in the charts; (2) are part of a series that ZTE admits is properly charted; (3) work the same way as the charted products; or (4) are moot.

### E. This Court Did Not Reject Brazos's Contentions in *OnePlus* and the Facts in *OnePlus* Are Different

In a final, desperate attempt to shift blame to Brazos, ZTE misrepresents and creates a false alignment between the instant case and *WSOU Invs. LLC v. OnePlus Tech. (Shenzhen) Co*., No. W-20-CV-00952-ADA, 2022 WL 174517 (W.D. Tex. Jan. 18, 2022). As an initial issue, the Court *denied* OnePlus's motion to strike and allowed Brazos to amend its infringement contentions. *Id.* at *2-3. Here, as shown, ZTE's inexcusable discovery obfuscation prevented Brazos from amending sooner and, at a minimum, Brazos should be granted leave to amend its FICs, which it has moved to do. (*See* Dkt. 264 at 3-5, 10.) Nor can anyone reasonably dispute that Brazos's claims here are well charted (although ZTE tries, and fails, to do so). As shown, the purportedly "uncharted" products: (1) are in the charts; (2) are part of a series ZTE admits as properly charted; (3) function identically to other charted products; or (4) are moot.

## V.   CONCLUSION

For the foregoing reasons, ZTE's motion to strike should be denied in its entirety.

Dated:  November 11, 2022                    Respectfully submitted,

By: */s/ Jonathan K. Waldrop*
    Jonathan K. Waldrop (CA Bar No. 297903)
    (Admitted in this District)
    jwaldrop@kasowitz.com
    Darcy L. Jones (CA Bar No. 309474)
    (Admitted in this District)
    djones@kasowitz.com
    Marcus A. Barber (CA Bar No. 307361)
    (Admitted in this District)
    mbarber@kasowitz.com
    John W. Downing (CA Bar No. 252850)
    (Admitted in this District)
    jdowning@kasowitz.com
    Heather S. Kim (CA Bar No. 277686)
    (Admitted in this District)
    hkim@kasowitz.com
    ThucMinh Nguyen (CA Bar No. 304382)
    (Admitted in this District)
    tnguyen@kasowitz.com
    Chen Jia (CA Bar No. 281470)
    (Admitted in this District)
    cjia@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    333 Twin Dolphin Drive, Suite 200
    Redwood Shores, California 94065
    Telephone: (650) 453-5170
    Facsimile: (650) 453-5171

    Paul G. Williams (GA Bar No. 764925)
    (Admitted in this District)
    pwilliams@kasowitz.com
    **KASOWITZ BENSON TORRES LLP**
    1230 Peachtree Street N.E., Suite 2445
    Atlanta, Georgia 30309
    Telephone: (404) 260-6080
    Facsimile: (404) 260-6081

    Charles A. Naggar (NY Bar No. 5356449)
    (Admitted *pro hac vice*)
    cnaggar@kasowitz.com
    Hershy Stern (NY Bar No. 4631024)
    (Admitted *pro hac vice*)
    hstern@kasowitz.com
    Howard L. Bressler (NY Bar No. 2487379)
    (Admitted *pro hac vice*)
    hbressler@kasowitz.com

Julianne Laporte (NY Bar No. 5547906)
(Admitted *pro hac vice*)
jlaporte@kasowitz.com
Lea Dartevelle Erhel (NY Bar No. 5172101)
(Admitted *pro hac vice*)
ldartevelle@kasowitz.com
Joshua A. Whitehill (NY Bar No. 4766473)
(Admitted *pro hac vice*)
jwhitehill@kasowitz.com
Noah P. Dorman (DC Bar No. 1779821)
(Admitted *pro hac vice*)
ndorman@kasowitz.com
Jessica C. Sutliff (NY Bar No. 2772150)
(Admitted *pro hac vice*)
jsutliff@kasowitz.com
Ryan A. Madden (NY Bar No. 5706080)
(Admitted *pro hac vice*)
rmadden@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
mark@swclaw.com
Craig D. Cherry (TX Bar No. 24012419)
craig@swclaw.com
Justin W. Allen (TX Bar No. 24081977)
justin@swclaw.com
Melissa S. Ruiz (TX Bar No. 24128097)
melissa@swclaw.com
**STECKLER WAYNE CHERRY & LOVE PLLC**
8416 Old McGregor Rd.
Waco, Texas 76712
Telephone: (254) 651-3690
Facsimile: (254) 651-3689

Gregory Phillip Love (TX Bar No. 24013060)
greg@swclaw.com
**STECKLER WAYNE CHERRY & LOVE PLLC**
107 East Main Street
Henderson, TX 75652
Telephone: (903) 212-4444
Facsimile: (903) 392-2267

**Attorneys for Plaintiff**
**WSOU INVESTMENTS, LLC d/b/a**
**BRAZOS LICENSING AND**
**DEVELOPMENT**

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was served or deli

vered electronically to all counsel of record, on this 17th day of November, 2022 via the Court's

CM/ECF System.

*/s/ Jonathan K. Waldrop*
Jonathan K. Waldrop